2005 WY 5

**Carmen T. ARAGON, Appellant (Plaintiff),**

v.

**Michael James ARAGON, Appellee (Defendant).**

No. 04–40.

Supreme Court of Wyoming.

Jan. 19, 2005.

Representing Appellant:  Ronald G. Pretty, Cheyenne, WY.

Representing Appellee:  Tracy L. Zubrod of Zubrod Law Office, P.C., Cheyenne, WY.

Before HILL, C.J., and GOLDEN, KITE, and VOIGT, JJ., and YOUNG, D.J.

YOUNG, District Judge.

[¶ 1] This appeal is from an order modifying the custody portion of a decree of divorce involving appellant Carmen T. Aragon (Mother) and appellee Michael James Aragon (Father). The order granted Father custody of the couple's four children, separating the children from their half siblings and stepsibling who remain in the custody of Mother and her new husband. We affirm.

## ISSUES

[¶ 2] Mother presents these issues for our review:

1. Do the doctrines of *res judicata* and *collateral estoppel* bar a claim that could have been brought in previous proceedings when issues concerning those claims existed at the time previous claims were brought[?]

2. Was awarding the [Father] custody of the children in the best interest of the children[?]

3. Did the court err by splitting the children[?]

Father phrases the issues:

1. Did the district court apply the proper standard when determining to modify custody?

2. Was there sufficient evidence to support the order granting Father's petition for modification?

3. Was the district court required to consider *Pace* [*v. Pace*, 2001 WY 43, 22 P.3d 861 (Wyo.2001),] when modifying custody of the parties' four children?

4. Is [Father] entitled to attorney fees and costs on appeal?

## FACTS

[¶ 3] On April 29, 1987, Mother and Father were married. The marriage produced four children.[1] Ultimately, Mother and Father were divorced on January 10, 2000, and Mother was awarded primary custody of the children. Father was granted visitation and ordered to pay child support.

[¶ 4] Both Father and Mother remarried. Mother and her new husband had two daughters together.[2] Mother's new husband has four children from a previous relationship, one of whom, a deaf son age sixteen at the time of hearing, resides with Mother and her new husband. Mother's father also resides with Mother and her new husband. Father and his new wife have no other children.

[¶ 5] In June of 2000, Mother petitioned the district court to modify Father's child support, modify Father's visitation with the children, allow Mother to claim the children as dependents for income tax purposes, and find Father in contempt. Father filed his own motions seeking to have Mother found in contempt for 1) improperly claiming the children for tax purposes, 2) not removing her name from certain motor vehicle titles, 3) denying Father visitation with the children, and 4) making derogatory statements about Father to the children. Discovery ensued. Each of these motions was eventually resolved through settlement entered between the parties in February of 2001. Pursuant to the settlement, on March 5, 2001, the district court entered an order modifying the decree of divorce, raising the child support to be paid by Father and altering Father's visitation with the children.

[¶ 6] In September of 2001, Father filed a motion seeking a correction in the computation of his child support obligation and asking that he be given credit for any overpayment in child support. Mother replied to this motion with a request that Father again be held in contempt for not properly meeting his child support responsibilities. Upon hearing, the district court granted Father's motion and entered its order on April 4, 2002. Thereafter, in May of 2002, Father filed a petition to change custody and support. After a day and a half hearing, the district court entered its order awarding Father cus-

---

1. At the time of hearing, these children were ages sixteen, thirteen, eleven, and ten. The oldest three children are boys, while the youngest child is a girl.

2. These children were approximately three years and six months of age at the time of hearing.

tody of the children, finding that Father had shown a material and substantial change of circumstances warranting a change in custody and that such change of custody was in the best interests of the children. This appeal followed.

## STANDARD OF REVIEW

[¶ 7]   We have previously reiterated the well recognized standard of review for custody determinations:

"Custody, visitation, child support, and alimony are all committed to the sound discretion of the district court. It has been our consistent principle that in custody matters, the welfare and needs of the children are to be given paramount consideration. The determination of the best interests of the child is a question for the trier of fact. 'We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle.' Fink [v. Fink ], 685 P.2d [34,] 36 [ (Wyo.1984) ]."

Reavis v. Reavis, 955 P.2d 428, 431 (Wyo. 1998). . . . Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. Pace v. Pace, 2001 WY 43, ¶ 9, 22 P.3d 861, ¶ 9 (2001); Vaughn v. State, 962 P.2d 149, 151 (Wyo.1998).

"Our review entails evaluating the sufficiency of the evidence to support the trial court's decision, and we afford to the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. We cannot sustain findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence. Similarly, an abuse of discretion is present when a material factor deserving significant weight is ignored. RDS v. GEMN, 9 P.3d 984, 986 (Wyo.2000)."

In re KRA, 2004 WY 18, ¶ 7, 85 P.3d 432, ¶ 7 (Wyo.2004) (some citations omitted).

## DISCUSSION

### Res Judicata/Collateral Estoppel

[¶ 8]   Mother argues that both the doctrines of res judicata and collateral estoppel apply in this case. According to Mother, the district court's orders of March 2001 and April 2002 must be considered final orders on the merits, which preclude Father from again litigating the issue of custody of the children. Specifically, Mother asserts that in each of the previous proceedings Father raised the issue of custody, or at least had an opportunity to raise the issue of custody. Thus, Mother contends that in the interests of finality and judicial economy, Father was prohibited from raising the issue of custody in May of 2002.

■ [¶ 9]   This court has previously addressed the doctrines of res judicata and collateral estoppel as these doctrines relate to modification of custody. This court's established policy manifests a balance between the doctrine of finality of judgments and judicial economy supported by the doctrines of res judicata and collateral estoppel, on the one hand, and the applicable statutes providing for modification of the provisions of a divorce decree concerning child custody, child support, visitation, and alimony, on the other hand.[3]   A court is charged with resolving that tension by determining if there has been a material change in circumstances warranting modification and that modification would be in the best interests of the children. Rogers v. Rogers, 973 P.2d 1118, 1122–23 (Wyo.1999); Ayling v. Ayling, 661 P.2d 1054, 1055–56 (Wyo.1983). See also generally, Ready v. Ready, 2003 WY 121, ¶ 11, 76 P.3d 836, ¶ 11 (Wyo.2003); Smith v. Smith, 895 P.2d 37, 41 (Wyo.1995).

■ [¶ 10]   While the doctrines of res judicata and collateral estoppel can bar reopening a divorce decree, a district court does retain jurisdiction to modify a decree of di-

---

**3.** Wyo. Stat. Ann. §§ 20–2–116, 20–2–203 and 20–2–204 (LexisNexis 2001) specifically allow the areas of alimony, custody, support, and visi-   tation addressed within a decree of divorce to be modified under certain circumstances.

vorce under certain circumstances. *Harshfield v. Harshfield,* 842 P.2d 535, 537–38 (Wyo.1992). One such circumstance is where the party is able to show a material change in circumstances surrounding the care, custody, and visitation of a child. Indeed, as we recently expressed in *Geerts v. Jacobsen,* 2004 WY 148, ¶ 17, 100 P.3d 1265, ¶ 17 (Wyo. 2004), Wyoming statutory law expressly provides courts with subject matter jurisdiction to enforce or modify a final decree of divorce concerning the care, custody, and visitation of a child as the circumstances of the parents and needs of the children require on either a temporary or permanent basis. Our examination and evaluation of the record in the instant case leads us to the conclusion that there was ample evidence presented to the district court to demonstrate that a material and substantial change of circumstances had occurred.

[¶ 11] Further, even upon application of the traditional standards of review applicable to the doctrines of res judicata and collateral estoppel, we hold that such doctrines do not apply given the circumstances established in this case.

In *Amoco Prod. Co. v. Board of County Comm'rs,* 2002 WY 154, ¶ 12, 55 P.3d 1246, ¶ 12 (Wyo.2002) (quoting *Eklund v. PRI Environmental, Inc.,* 2001 WY 55, ¶¶ 15–20, 25 P.3d 511, ¶¶ 15–20 (Wyo.2001)), we recognized that res judicata and collateral estoppel are related but distinct concepts. We noted that res judicata bars the relitigation of previously litigated claims or causes of action and that four factors are examined to determine whether the doctrine of res judicata applies: (1) identity in parties; (2) identity in subject matter; (3) the issues are the same and relate to the subject matter; and (4) the capacities of the persons are identical in reference to both the subject matter and the issues between them. Collateral estoppel bars relitigation of previously litigated issues and involves an analysis of four similar factors: (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether

the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.

*Markstein v. Countryside I, L.L.C.,* 2003 WY 122, ¶ 15, 77 P.3d 389, ¶ 15 (Wyo.2003).

[¶ 12] Application of each of the four factors regarding res judicata and collateral estoppel, respectively, demonstrate that the previous proceedings in this case did not limit Father's ability to request a custody modification in May of 2002. The identity of the parties, the identity of the subject matter, and the capacities of the parties remained identical in reference to both the subject matter and the issues between them throughout this action. However, the matters decided in the prior adjudications did not expressly address custody of the children as presented by Father in the last proceeding. Therefore, it was impossible for the prior adjudications to have resulted in orders on the merits regarding custody of the children.

[¶ 13] Initially, the parties appeared before the district court resulting in the March 5, 2001 order addressing the issues of 1) child support, 2) medical expenses, and 3) additional weekend visitations between Father and the children. This order was entered by the district court upon the parties reaching full settlement of these issues. The issues resolved upon settlement were limited only to these issues and did not include custody of the children.

[¶ 14] Additionally, the district court explicitly recognized in its March 5, 2001 order, as specifically agreed upon by the parties in settlement, that the willful violation of any of the terms stipulated to by the parties and set forth in the order or any other court order could be punishable as contempt of court and could constitute a change of circumstances warranting a change in custody. Hence, neither Father nor Mother intended to be foreclosed from contesting custody in any subsequent proceedings. To the contrary, the parties absolutely contemplated and specified that such a possibility existed. Thus, we

conclude that the district court was correct in not applying the doctrine of collateral estoppel in this instance.

[¶ 15] The second time the parties appeared before the district court, the district court entered an order granting the parties' requested relief. This order only addressed the district court's miscalculation of child support and Father's child support arrearage. Custody of the children, or modification thereof, was not addressed. Consequently, the doctrine of collateral estoppel cannot be applied because the district court did not then make a specific determination on the merits concerning custody of the children.

[¶ 16] We also do not agree with Mother's argument that because custody is interwoven with a determination of child support, the doctrine of collateral estoppel is applicable in this case. If custody is modified, then child support can be addressed, but nothing in law requires such action. Similarly, the modification of child support does not necessarily mandate that a modification of custody be considered.

[¶ 17] Mother further implies, through bald assertion unsupported by reference to the record, that because Father propounded discovery that might have some bearing on the modification of custody of the children during the initial proceeding, he was required to address the custody modification at that time.[4] First, it must again be recognized that each of the issues involving the initial proceedings in this action was fully settled voluntarily by the parties. In addition, W.R.C.P. 26(b)(1)(A) makes it clear that discovery may be undertaken in any area, not privileged, which is relevant to the subject matter involved in the pending action or any area that is reasonably calculated to lead to the discovery of admissible evidence. Thus, Father had an expected right to delve into those issues as they related to the issues then formally raised before the district court. Obviously, if Mother believed that the discovery requested by Father was inappropriate, she could have addressed such contention

formally with the district court through a motion for protective order pursuant to W.R.C.P. 26(c). Critically, the issue of custody modification was not formally raised for the district court's consideration from the time of entry of the initial decree of divorce until Father filed his May 2002 motion. We do not find it unreasonable for Father to have waited until such time to do so.

[¶ 18] Mother additionally asserts that allowing Father to bring his May 2002 motion under the circumstances allows him to 1) manipulate the judicial system in a quest to re-litigate an issue until a desired answer is achieved, 2) continue to control Mother, and 3) undermine desired stability in the children's lives. She further contends that such a result cuts against the doctrine of finality and judicial economy. However, the fact still remains that until Father brought his May 2002 motion, he had not previously been given a formal full and fair opportunity to litigate the issue of modification of custody before the district court since entry of the original divorce decree on January 10, 2000. Therefore, we find Mother's complaints unpersuasive.

### Abuse of Discretion

[¶ 19] Mother claims that the district court abused its discretion when it awarded Father custody of the children. Specifically, Mother asserts that the district court erred when it failed to give weight to certain evidence at trial. That evidence included the oldest son's testimony during trial that he had been held by the arm and throat and thrown on a bed by Father when Father was angry. In addition, Mother complains that the district court 1) improperly disallowed evidence of Father's unwillingness to foster a relationship with Mother, as allegedly shown through a letter sent from Father's counsel to Mother's counsel and 2) inappropriately refused to take judicial notice of an earlier order that did not provide for an additional seven weekends of visitation between Father

---

4. Mother alleges that this discovery raised issues concerning care of the children, the size of the home in which the children resided, and their struggles in school. In addition, Mother contends that Father listed witnesses and proposed exhibits concerning these areas in his pretrial disclosure pleading.

and the children as was provided in the divorce decree.

[¶ 20] In making her argument, Mother asserts that such evidence was significant and the district court failed to properly weigh this evidence in making its determination. Mother fails to otherwise substantiate her argument or cite applicable authority supporting this position. In addition, as to the two latter identified documents, the appellate record is devoid of any request for the district court to admit the subject letter as evidence or take judicial notice of the earlier order. The record on appeal similarly does not include the referenced letter or order. An appellant bears the burden of bringing to the reviewing court a sufficient record on which to base a decision. *Erhart v. Evans,* 2001 WY 79, ¶ 18, 30 P.3d 542, ¶ 18 (Wyo.2001). Thus, we will not further consider these matters.

[¶ 21] As to the weight accorded the other evidence, we have long recognized that evidentiary rulings are within the sound discretion of the trial court and include the adequacy of foundation, competency, materiality, and remoteness of the evidence. This court, therefore, will accede to the trial court's determination of the admissibility of evidence unless the court clearly abused its discretion. The burden is on the party asserting an abuse of discretion to establish such an abuse. *Person v. State,* 2004 WY 149, ¶ 11, 100 P.3d 1270, ¶ 11 (Wyo.2004). In this instance Mother failed to meet the applicable burden.

[¶ 22] While the oldest son did testify during trial that he had been held by the arm and throat and thrown onto a bed by Father, testimony was also elicited from the oldest son that this event was singular in nature and took place when Father was trying to break up a physical encounter that had developed between the oldest son and his younger brother. Additional testimony showed that the stepfather of the children and Mother engaged in a heated argument in front of the children while stepfather was intoxicated. During the course of the argument, stepfather struck Mother. This event resulted in one of the children calling the police for assistance and greatly upsetting the children. In *Produit v. Produit,* 2001 WY 123, ¶ 22, 35 P.3d 1240, ¶ 22 (Wyo.2001), we recognized:

The trial judge is in the best position to assess the credibility of the witnesses and weigh their testimony. *Raymond v. Raymond,* 956 P.2d 329, 332 (Wyo.1998); *Goff v. Goff,* 844 P.2d 1087, 1092 (Wyo.1993). This entire case revolved around the assessment of credibility and the proper weight of testimony. The evidence was relatively evenly distributed. However, it is conceivable that the district court weighed the evidence that the mother essentially abandoned the family and had a recent history of personal and employment instability against her former role as primary care giver. It could have also weighed the evidence with regard to the father's parenting skills, employment stability, and conduct during the period of temporary custody to determine he was the more fit and stable parent. Such an evaluation would require the assessment of the witnesses' credibility and the weighing of conflicting testimony. A process of this kind could readily swing the balance toward one party despite there being a material factor in favor of the other party. Therefore, we cannot conclude the mother's former role as primary care giver, or any other material factor, was ignored. *Reavis,* 955 P.2d at 431; *Triggs v. Triggs,* 920 P.2d 653, 657 (Wyo.1996), abrogated on other grounds by *Vaughn,* 962 P.2d at 151. Due to the nature of the evidence this case presents, we must rely on the fact finder's determinations and accord them considerable deference. *Raymond,* 956 P.2d at 332; *Brown v. State,* 944 P.2d 1168, 1170 (Wyo. 1997). We hold the custody award to the father is not against the great weight of the evidence and does not constitute an abuse of discretion.

The same reasoning applies in this case. While there were factors weighing in Mother's favor, there were similar factors weighing in Father's favor. It is the district court's duty to weigh the evidence in making custody determinations. Here, it appears from the record that the district court considered all the evidence in making its ulti-

mate decision. It must further be acknowledged that under the applicable standard of review, this court has an obligation to afford Father, as the prevailing party, every favorable inference while omitting any consideration of evidence presented by Mother, the unsuccessful party. *In re KRA,* at ¶ 7.

[¶ 23] Finally, Mother argues that the district court erred by awarding Father custody of the children, thereby splitting the children from their half siblings and stepsibling. According to Mother, the case of *Dowdy v. Dowdy,* 864 P.2d 439, 440 (Wyo. 1993), stands for the proposition that separating siblings through custody awards to different parents is not preferred. Mother contends that this rule of law should apply to half siblings and stepsiblings, as well as full siblings. Mother also asserts that the district court failed to adequately state the factors upon which it relied and the evidence that supported its decision as required by our decision in *Pace,* which provides at ¶ 17 (footnote omitted):

> As future guidance to the trial courts, we hold that, when the exercise of its discretion in custody matters involves splitting custody of children between parents or other unconventional custody approaches, the trial court must provide an explanation of its reasoning and place its findings on the record. A reasoned explanation and an expression of findings of a trial court's conclusion will assure this court that a comprehensive evaluation of all relevant factors occurred prior to the award of custody.

Thus, Mother asserts that, at a minimum, this matter must be remanded to the district court for an elaboration of such factors.

[¶ 24] A reading of our opinion in *Dowdy* does indicate that generally speaking the separating of siblings through custody awards to different parents is not preferred. Keeping siblings together in the same household is considered the better practice. However, this court clarified that the effect of separating siblings from each other is just *one* of several factors courts consider in determining the primary issue—the best interests of the children. *Dowdy,* at 440 (citing Jay M. Zitter, Annotation, *Child Custody:*

*Separating Children by Custody Awards to Different Parents—Post–1975 Cases,* 67 A.L.R.4th 354, § 2[a], 1989 WL 571744 (1989) and *In re Marriage of Barnthouse,* 765 P.2d 610 (Colo.App.1988)). In other cases we have consistently taken this position. See *Reavis,* at 431, *Rogers v. Rogers,* 973 P.2d 1118, 1121 (Wyo.1999), and *Pace,* at ¶ 11. We have instructed trial courts to be explicit in placing on the record the reasons supporting its determination to separate siblings so as to assure that a comprehensive evaluation of all relevant factors occurred prior to the award of custody. We have additionally admonished trial counsel that they cannot remain passive and must assist the trial judge in articulating on the record the relevant factors and their relative weight which, in the lawyer's professional judgment, should act as a foundation for the trial court's exercise of judicial discretion. *Pace,* at ¶ 18. The standards as enunciated within both *Dowdy* and *Pace* remain valid and applicable, but we emphasize that these standards must be applied within their ***full context*** as specifically identified.

[¶ 25] Further while we do not expressly adopt such holdings, we find upon our review of established foreign case authority that other jurisdictions are essentially in accord with the standards established in *Dowdy* and *Pace.* Although we acknowledge that there is somewhat of a split of authority in the weight to be given to sibling relationships in custody determinations, all jurisdictions we reviewed agree that the paramount focus in determining who should be given custody of a child is what outcome would optimally serve the best interest of each child. That said, some jurisdictions recognize that sufficient circumstances, looking at the totality of the situation with the best interest of the child being the paramount concern, must exist before siblings are separated. See *Miers v. Miers,* 53 S.W.3d 592, 596 (Mo.App.2001); *Viamonte v. Viamonte,* 131 Md.App. 151, 748 A.2d 493, 496–99 (2000); *Mayer v. Mayer,* 397 N.W.2d 638, 644–45 (S.D.1986). Other jurisdictions reserve a higher "exceptional circumstances" standard only if the contemplated separation involves full siblings. See *Eaton v. Dixon,* 69 Ark.App. 9, 9 S.W.3d 535, 537 (2000).

[¶ 26] Moreover, we find the strong public policy toward preservation of sibling relationships to be equally applicable whether the children are full sibling, half sibling, or stepsiblings. As recognized in Atkinson, *Modern Child Custody Practice,* § 4–17 (2d ed.2004), a recurrent theme in custody cases is the importance of keeping siblings together because close familial relationships are much to be encouraged, brothers and sisters need each other's strengths and association in those everyday and often common experiences; separating them unnecessarily is likely to be traumatic and harmful. In addition, brothers and sisters may particularly need each other's support to cope with the strain of their parents' divorce. This same treatise further notes that the presumption of keeping children together has been applied by many courts in cases where children have only one parent in common, i.e., brothers and sisters who were born of a parent's prior or subsequent marriage. *Id.* Thus, we hold that our established standards enunciated in *Dowdy* and *Pace* are applicable for all siblings regardless of their nature.

[¶ 27] Having established the proper criteria to be used when considering the potential splitting of children from their siblings, of whatever status, we now must review the facts as they exist in this case. The evidence convinces us that the decision of the district court to award Father custody of the children and thereby separate them from their half siblings and stepsibling is supported by substantial evidence.

[¶ 28] In its order, the district court found that, while both parents were fit and proper to have custody of the children and it was obvious that both parents cared deeply for the children, the history of the parties in the matters of visitation had been nothing but detrimental. To such end, the district court noted that although Father was to receive liberal visitation of the children, that had not occurred because of Mother's obstructions. The district court further found that Mother had exhibited an inability to interact and communicate with Father. Spe-

cifically, the district court noted that there was no excuse for Mother removing Father from the school contact forms and for failing to accept certified letters from Father regarding his visitation requests. The district court identified that Mother had failed to respect Father's rights and responsibilities.

[¶ 29] Additionally, the district court found that Mother's testimony concerning anticipated future living conditions for the children was not credible, particularly recognizing that since the divorce the children had lived with Mother in several different locations causing the children to attend several different schools. The district court further stated that the financial situation of Mother's new husband had changed and that the supervision and current living conditions at Mother's home and the plans to change those conditions lent even more instability to the children's lives. The court also concluded that Father could provide a more stable environment for the children. While Father may be working out of town, Father's current wife was good with the children and had the ability to support and care for the children. The court further noted that Father had demonstrated a willingness to create and foster a relationship between the children and Mother and that credible evidence existed that domestic violence had occurred in Mother's home.

[¶ 30] Thus, the district court concluded that it was in the children's overall best interest that Father be awarded custody. In addition, we further find that the district court's order was sufficiently detailed so as to provide an adequate basis for the district court's ultimate determination awarding Father custody of the children.[5] Accordingly, we hold that the district court did not abuse its discretion when it entered its order granting Father custody of the children. Again, we emphasize:

"The law affords wide discretion to the district court when fashioning custody and visitation provisions for the best interests

---

5. However, we again emphasize that trial courts should provide the most comprehensive, detailed, and well-reasoned explanation and expression of findings of fact possible to support its conclusions so as to assure this court on appeal that a comprehensive evaluation of all relevant factors occurred prior to the award of custody.

of the children." *Reavis*, 955 P.2d at 431. We recognize such discretion encompasses one of the most difficult and demanding tasks assigned to a trial judge. *Id.* Ultimately, the "goal to be achieved is a reasonable balance of the rights and affections of each of the parents, with paramount consideration being given to the welfare and needs of the children." *Leitner v. Lonabaugh*, 402 P.2d 713, 720 (Wyo.1965); see also *Dowdy v. Dowdy*, 864 P.2d 439, 440 (Wyo.1993).

*Pace*, at ¶ 11.

### Sanctions on Appeal

[¶ 31] Father asks that we impose sanctions against Mother pursuant to W.R.A.P. 10.05. Although we affirm the actions of the district court, we decline to impose sanctions. Mother's brief was not so lacking in cogent argument or pertinent authority that it constituted that rare circumstance where sanctions are appropriate. See *Maher v. Maher*, 2004 WY 62, ¶ 18, 90 P.3d 739, ¶ 18 (Wyo.2004).

### CONCLUSION

[¶ 32] We affirm the district court's determination to award Father custody of the children. We deny Father's request that we levy sanctions against Mother on appeal.