2009 WY 127

**Shannon BLAKELY, Appellant (Plaintiff),**

v.

**Brandon BLAKELY, Appellee (Defendant).**

No. S–09–0020.

Supreme Court of Wyoming.

Oct. 20, 2009.

Representing Appellant: Christopher M. Wages of Goddard, Wages & Vogel, Buffalo, Wyoming.

Representing Appellee: Rick Erb of Richard A. Erb Jr., P.C., Gillette, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] Shannon Blakely (Mother) appeals from her divorce decree, contending that the district court abused its discretion when it awarded Brandon Blakely (Father) primary residential custody of the parties' two sons, while the half-brother remained in Mother's custody. We affirm.

## ISSUE

[¶ 2] Mother states the single issue as follows:

Whether the District Court erred when it awarded primary residential custody of the parties' two minor children to [Father]?

## FACTS

[¶ 3] The parties to this action married on January 7, 2003. Mother brought a son, CS, into the marriage, and at the time of the marriage, Mother was pregnant with the couple's first son, CB, who was born in May of 2003. The couple's second son, EB, was born in August of 2005. During the relationship, the family lived in Buffalo, but Father often worked out of town.

[¶ 4] The couple separated in October of 2005, with Mother leaving the home and taking all three boys with her. In June of 2007, Mother officially moved to Gillette with the three boys—by this time Mother was engaged to another man and expecting her fourth son, who was born in September of 2007. Father, meanwhile, continued to exercise visitation with his two sons.

[¶ 5] Mother filed for divorce in August of 2007, and both parties requested temporary custody, which the district court awarded to Father on January 25, 2008. The case was tried on July 11, 2008, and at the close of evidence, the court made findings on the record. Ultimately, the court awarded primary residential custody to Father, with visitation to Mother. Mother appeals that decision.

## STANDARD OF REVIEW

[¶ 6] We have stated before that "[c]ustody, visitation, child support, and alimony are all committed to the sound discretion of the district court." *Reavis v. Reavis*, 955 P.2d 428, 431 (Wyo.1998).

This Court has consistently recognized the broad discretion enjoyed by a district court in child custody matters. We will not interfere with the district court's custody determination absent procedural error or a clear abuse of discretion. In determining whether an abuse of discretion has occurred, our primary consideration is the reasonableness of the district court's decision in light of the evidence presented. We view the evidence in the light most favorable to the district court's determination, affording every favorable inference to the prevailing party and omitting from our consideration the conflicting evidence.

*Durfee v. Durfee,* 2009 WY 7, ¶ 6, 199 P.3d 1087, 1089 (Wyo.2009) (citations omitted).

[¶ 7] Furthermore,

It has been our consistent principle that in custody matters, the welfare and needs of the children are to be given paramount consideration. The determination of the best interests of the child is a question for the trier of fact. We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle. *Resor v. Resor,* 987 P.2d 146, 148 (Wyo.1999), quoting *Reavis v. Reavis,* 955 P.2d 428, 431 (Wyo.1998). *Testerman v. Testerman,* 2008 WY 112, P 8, 193 P.3d 1141, 1144 (Wyo.2008).

A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. Our review entails evaluation of the sufficiency of the evidence to support the district court's decision.... Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. Similarly, an abuse of discretion is present when a material factor deserving significant weight is ignored. *Eickbush v. Eickbush,* 2007 WY 179, ¶ 9, 171 P.3d 509, 511 (Wyo.2007) (citations omitted).

*Buttle v. Buttle,* 2008 WY 135, ¶ 15, 196 P.3d 174, 178 (Wyo.2008).

*Parris v. Parris,* 2009 WY 44, ¶ 15, 204 P.3d 298, 303 (Wyo.2009).

## DISCUSSION

[¶ 8] Mother claims on appeal that in its decision giving primary residential custody to Father, the district court did not "give the welfare and needs of the children paramount consideration." Mother insists that the evidence presented at trial indicated that she was the more appropriate party to have primary residential custody. Essentially, Mother asks us to reweigh the evidence considered by the district court when she points to, and analyzes in detail, each of the statutory factors that guide a custody determination under Wyo. Stat. Ann. § 20–2–201(a) (LexisNexis 2009).

[¶ 9] Father contends that the court's decision is supported by the evidence and was a proper exercise of discretion—and, as evidenced by the court's oral ruling, the court thoroughly evaluated the evidence along with the statutory factors.

[¶ 10] As we have consistently articulated, "This Court ... does not reweigh evidence. Instead, we view the facts in the light most favorable to the prevailing party." *Hayzlett v. Hayzlett,* 2007 WY 147, ¶ 8, 167 P.3d 639, 642 (Wyo.2007). In child custody determinations, the district court must base its decision on the factors articulated in § 20–2–201(a), which provides:

(a) In granting a divorce, separation or annulment of a marriage or upon the establishment of paternity pursuant to W.S. 14–2–401 through 14–2–907, the court may make by decree or order any disposition of the children that appears most expedient and in the best interests of the children. In determining the best interests of the child, the court shall consider, but is not limited to, the following factors:

(i) The quality of the relationship each child has with each parent;

(ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;

(iii) The relative competency and fitness of each parent;

(iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;

(v) How the parents and each child can best maintain and strengthen a relationship with each other;

(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;

(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;

(viii) Geographic distance between the parents' residences;

(ix) The current physical and mental ability of each parent to care for each child;

(x) Any other factors the court deems necessary and relevant.

[¶ 11] No single factor is determinative. *Hayzlett*, ¶ 10, 167 P.3d at 642. In fact, depending on the case, different factors will present a greater need for emphasis. The one constant is that the resolution must be in the best interests of the children in that particular family. *Id.*

[¶ 12] With these principles in mind, we turn to the facts of the instant case. The record is clear that each parent had a good relationship with the children. The court stated in its oral findings, "... these are two good parents. They both love their children and want the best for their children." Indeed, each party appears to be more than able to handle the care of the children, and the record contains evidence favorable to each party. For instance, Mother lives in a four-bedroom, two-bath home on two and a half acres, and is a stay-at-home mom. And even though Father works full-time, he is very responsible regarding daycare and has that "all lined out," according to the district court. The court found both parents to be on equal footing regarding maintaining and strengthening relationships with each other. The court also found to be a positive feature of both parents "the support of their extended families." The phrase "equal footing" was also applied regarding how the parents and each child interact and communicate with each other, as well as the ability and willingness of each parent to allow the other to provide care without intrusion, respecting the other parent's rights and responsibilities, including the right to privacy. By and large, the court found the parents to be on "equal footing" on most of the factors it considered.

[¶ 13] Nevertheless, Mother points to a factor in particular that she believes weighs in her favor—that giving custody of EB and CB to Father splits up the four brothers. This Court has addressed the issue of separating siblings:

[G]enerally speaking the separating of siblings through custody awards to different parents is not preferred. Keeping siblings together in the same household is considered the better practice. However, this court clarified that the effect of separating siblings from each other is just *one* of several factors courts consider in determining the primary issue-the best interests of the children.

*Aragon v. Aragon*, 2005 WY 5, ¶ 24, 104 P.3d 756, 763 (Wyo.2005) (emphasis in original).

[¶ 14] The district court addressed this very issue at length on the record:

All right. Another factor I want to take up, under factor 10, which is the general factor that may influence the Court decision is the subject of the half siblings, because it is very important.

Certainly, in an ideal world, all siblings, be half or whole, be brought up under the same roof, that is probably preferred the avenue [sic] but other factors must be taken into account there. I want the record to reflect I have taken into account the value of half-siblings being raised under the same roof, and I recognize that value.

. . . .

I am also going to note that right at this moment, that dad has indicated that he has no problem in affording access of these two boys, [CB] and [EB] to their half siblings, and I take that representation at face value.

I want you to know, sir, that if that does not happen, that this Court is going to consider that to be a material and substantial change in circumstances, that could conceivably justify a change in custody later on so that should influence you in the right direction here. These boys need to have a full, deep, and long relationship with their half-siblings. And there is no reason why you and their mother cannot arrange that, particularly when you have the support of your extended families behind you.

[¶ 15]  The court concluded that it was in the children's overall best interests that Father be awarded custody.  Furthermore, the court's oral findings were sufficiently detailed so as to provide an adequate basis for its ultimate determination awarding Father custody of the two boys, effectively separating them from their brothers for much of the time.

[¶ 16]  Because this was such a close case, we would like to again emphasize:

"The law affords wide discretion to the district court when fashioning custody and visitation provisions for the best interests of the children." [*Reavis v. Reavis*, 955 P.2d 428 (Wyo.1998) ] at 431.  We recognize such discretion encompasses one of the most difficult and demanding tasks assigned to a trial judge.  *Id.* Ultimately, the "goal to be achieved is a reasonable balance of the rights and affections of each of the parents, with paramount consideration being given to the welfare and needs of the children." *Leitner v. Lonabaugh*, 402 P.2d 713, 720 (Wyo.1965); see also *Dowdy v. Dowdy*, 864 P.2d 439, 440 (Wyo. 1993).

*Aragon,* ¶ 30, 104 P.3d at 764, 765.

[¶ 17]  Certainly, reasonable minds could reach different conclusions about which parent's custody would be in the best interests of the children.  *Hayzlett,* ¶ 13, 167 P.3d at 643.

Seldom if ever does a divorce court have a choice between a parent who is all good on one side and a parent who is all bad on the other side.  The matter of awarding custody is a comparative proposition wherein the court exercises its best judgment and discretion and awards custody to one parent or to the other, according to what the court thinks is for the best interest and welfare of the children.

*Id.* (quoting *Wilson v. Wilson*, 473 P.2d 595, 598 (Wyo.1970)).  Here, even the district court admitted this was a close, tough case. This Court will accede to the district court's determination of the admissibility of evidence unless the court clearly abused its discretion. *Aragon,* ¶ 21, 104 P.3d at 762.  The burden is on the party asserting an abuse of discretion

to establish such an abuse.  *Id.* In this instance, Mother has failed to meet the applicable burden and because the record includes sufficient evidence to support the district court's decision, we can find no abuse of discretion in the district court's award of custody to Father.

## CONCLUSION

[¶ 18]  The district court did not err when it awarded Father primary residential custody of his two sons.  This Court can find no abuse of discretion by the district court, and, accordingly, we affirm its decision.