# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 95

### APRIL TERM, A.D. 2015

### July 20, 2015

JCLK k/n/a JCLS,

Appellant
(Respondent),

v.

S-14-0309

ZHB,

Appellee
(Petitioner).

*Appeal from the District Court of Laramie County*
*The Honorable Steven K. Sharpe, Judge*

*Representing Appellant:*

    *John C. Schumacher, White & White, P.C., Riverton, Wyoming.*

*Representing Appellee:*

    *No appearance.*

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]   In this paternity action, JCLK (Mother) appeals the district court's decision to award primary custody of four-year-old BHB to ZHB (Father).  Our review convinces us that the district court did not abuse its discretion.  We will affirm.

*ISSUE*

[¶2]   Mother raises two issues, which we have consolidated for the sake of clarity:

> Did the district court abuse its discretion in awarding primary
> custody of BHB to Father?

*FACTS*

[¶3]   BHB was born in May 2010, in Cheyenne, Wyoming.  Although Mother and Father were never married, it is undisputed that Father is BHB's biological parent.  In October 2010, Father filed a petition in the district court seeking to establish paternity, custody, visitation, and child support for BHB.  A few days later, Father filed a motion for a mutual restraining order providing that BHB could not be removed from Laramie or Albany Counties during the pendency of the litigation.  The district court entered the order.

[¶4]   Aside from an occasional motion or stipulation for temporary visitation and a few standard district court orders concerning mediation and parenting classes, the district court's pleading file indicates that nothing happened in the matter until July 2013, when the district court issued a "Notice of Imminent Dismissal" due to inactivity in the case.  Father responded with a request for a trial setting.  Trial was held on August 28, 2014.

[¶5]   Specific details of the evidence will be discussed as they relate to the issues below.  A general outline will be set forth here.  BHB was four at the time of the trial.  He had lived with Mother since his birth.  Mother had married, and was living in Shoshoni, Wyoming, at the time of trial.  Also living in the household were Mother's husband, a seven-month-old half-sibling who is the biological child of Mother and her husband, and two half-siblings aged 5 and 6 who are the biological children of Mother and another man.  Contrary to the restraining order prohibiting BHB's removal from Laramie or Albany Counties, Mother had lived with BHB in Guernsey, Wheatland, and Chugwater, all in Platte County, and in Shoshoni, in Fremont County.

[¶6]   Father lived in Cheyenne at the time of trial, where his parents and other family members also resided.  He had a steady job with an electric company, and was also serving in the Wyoming National Guard.  He tried to have visitation with BHB "every couple of months," and tried to call to check up on him "every couple of weeks."

1

Although Mother portrayed the contacts between Father and BHB as less frequent, she acknowledged that BHB appeared attached to Father. It was undisputed that Father had never provided significant financial support for BHB.

[¶7]    Mother appeared *pro se* at trial. Father was represented by counsel. The witnesses at trial were Mother, Mother's husband, Father, and Father's mother. Both Mother and Father sought primary custody of BHB. The district court decided in favor of Father, and Mother challenges that decision on appeal.

## *STANDARD OF REVIEW*

[¶8]    Custody and visitation are committed to the sound discretion of the trial court. *Blakely v. Blakely*, 2009 WY 127, ¶ 6, 218 P.3d 253, 254 (Wyo. 2009).

> This Court has consistently recognized the broad discretion enjoyed by a district court in child custody matters. We will not interfere with the district court's custody determination absent procedural error or a clear abuse of discretion. In determining whether an abuse of discretion has occurred, our primary consideration is the reasonableness of the district court's decision in light of the evidence presented. We view the evidence in the light most favorable to the district court's determination, affording every favorable inference to the prevailing party and omitting from our consideration the conflicting evidence.

*Durfee v. Durfee*, 2009 WY 7, ¶ 6, 199 P.3d 1087, 1089 (Wyo. 2009) (citations omitted).

## *DISCUSSION*

[¶9]    At the close of trial, the district court explained in considerable detail its decision to award primary custody to Father. It discussed all of the factors required by Wyo. Stat. Ann. § 20-2-201 (LexisNexis 2013) to be considered in a child custody case. The court found that both parents loved BHB, each had a quality relationship with him, and both were capable of providing adequate care for him. In discussing the parents' relative competency and fitness, the court expressed concerns about both Mother and Father.

[¶10]  The district court's concerns about Mother included her smoking cigarettes even though BHB has respiratory problems, her violation of the restraining order by taking BHB out of Laramie and Albany Counties, and her failure to inform Father of her new locations when she moved. Perhaps most significantly, the district court also expressed concern about her judgment as a parent because she returned her two older children to their biological father after she discovered evidence that he may have abused one of

them.

[¶11] The court's concerns about Father included his failure to pay child support throughout BHB's life, his limited contact with BHB, and his failure to move forward with his paternity suit for more than a year after it was filed. As positive aspects in Father's favor, the court listed "solid employment," the financial capability to provide for BHB, the ability to provide health insurance, family available to help support BHB, and a loving and nurturing relationship with BHB. While the district court found it "a very difficult decision," on balance it found that Father was the "more competent and fit parent in this case," and awarded primary custody to Father and visitation to Mother.

[¶12] Mother's challenge to the district court's decision rests primarily on the fact that the custody determination effectively separates BHB from his half-siblings. Based on *Dowdy v. Dowdy*, 864 P.2d 439, 440 (Wyo. 1993), Mother points out that "separating siblings from each other through custody awards to different parents is not preferred." She cites to our holding in *Pace v. Pace*, 2001 WY 43, ¶ 17, 22 P.3d 861, 867 (Wyo. 2001):

> As future guidance to the trial courts, we hold that, when the exercise of its discretion in custody matters involves splitting custody of children between parents or other unconventional custody approaches, the trial court must provide an explanation of its reasoning and place its findings on the record. A reasoned explanation and an expression of findings of a trial court's conclusion will assure this court that a comprehensive evaluation of all relevant factors occurred prior to the award of custody.

(Footnote omitted.) Mother claims the district court erred because it failed to explain its reasons for separating BHB from his half-siblings and did not place any findings regarding the half-siblings on the record.

[¶13] We recognized in *Dowdy*, 864 P.2d at 440, that:

> The general rule across the country is that separating siblings from each other through custody awards to different parents is not preferred. *See, e.g., Craig v. McBride*, 639 P.2d 303 (Alaska 1982); *Pennington v. Pennington*, 711 P.2d 254 (Utah 1985); and *In re Marriage of Moe*, 66 Or.App. 947, 676 P.2d 336 (1984). Keeping siblings together in the same household is generally considered to be the better practice. However, the effect of separating siblings from each other is just one of several factors courts consider in determining the

3

primary issue – the best interests of the children. *See* Jay M. Zitter, Annotation, *Child Custody: Separating Children by Custody Awards to Different Parents – Post-1975 Cases*, 67 A.L.R. 4th 354, § 2[a] (1989). *See also In re Marriage of Barnthouse*, 765 P.2d 610 (Colo. Ct. App. 1988), *cert. denied*, 490 U.S. 1021, 109 S.Ct. 1747, 104 L.Ed.2d 184 (1989).

This concept has been repeated in other cases. *E.g.*, *Rogers v. Rogers*, 973 P.2d 1118, 1121 (Wyo. 1999) ("We acknowledge that separating siblings from each other through custody awards to different parents is not a preferred resolution, but the effect of the separation of siblings is simply one of several factors that courts consider in determining the best interests of the child or children."). We recognized in *Rogers*, as we had in *Dowdy*, that "the effect of the separation of siblings is simply one of several factors that courts consider in determining the best interests of the child or children." *Rogers*, 973 P.2d at 1121. In both *Dowdy and Rogers*, we upheld custody determinations that separated siblings or half-siblings because the courts had considered other appropriate factors, and did not abuse their discretion in determining that the best interests of the children were served by a custody arrangement that resulted in the separation of the siblings or half-siblings. *Dowdy*, 864 P.2d at 441; *Rogers*, 973 P.2d at 1121.

[¶14]  In *Pace*, we said that a court "must" explain on the record the basis for a decision to separate siblings. *Id.*, ¶ 17, 22 P.3d at 867. In *Pace*, the parents had been married for almost nineteen years. They had four sons, ages seventeen, thirteen, twelve, and six, and two daughters, ages sixteen and eight. *Id*., ¶ 3, 22 P.3d at 863. The district court awarded custody of the sons to the father and the daughters to the mother. *Id*., ¶ 8, 22 P.3d at 864. We noted that this result was "inconsistent with the evidence presented, the GAL's recommendation, and the parties' positions." *Id*., ¶ 8, 22 P.3d at 864-65. We were also concerned that the custody award may have violated the prohibition in Wyo. Stat. Ann. § 20-2-113(a) (LexisNexis 1999) against awarding custody "solely on the basis of gender of the parent." *Pace*, ¶ 12, 22 P.3d at 865. We reversed the district court's decision because it had not adequately explained the basis for its decision to separate the siblings, and because there was "insufficient evidence in the record to support the particular custody split which was ordered." *Id*., ¶ 19, 22 P.3d at 867.

[¶15]  In *Noonan v. Noonan*, 2005 WY 145, ¶ 10, 122 P.3d 964, 966 (Wyo. 2005), we explained that

close familial relationships are much to be encouraged, brothers and sisters need each other's strengths and association in those everyday and often common experiences; separating them unnecessarily is likely to be traumatic and harmful. In addition, brothers and sisters may particularly

4

need each other's support to cope with the strain of their parents' divorce.

Because the divorce in *Noonan* had been granted in a default judgment, there was a complete lack of evidence in the record regarding separation of the siblings. We also found the district court's findings inadequate to explain its decision to separate the siblings. We remanded the case for further proceedings. *Id*., ¶ 12, 122 P.3d at 967.

[¶16] In *Aragon v. Aragon*, 2005 WY 5, 104 P.3d 756 (Wyo. 2005), we recognized the rule that the trial court "must" explain on the record the basis for a decision to separate siblings, and stated that the "strong public policy toward preservation of sibling relationships" is "equally applicable whether the children are full sibling[s], half sibling[s], or stepsiblings." *Id*., ¶¶ 24, 26, 104 P.3d at 763-64. But while the district court had not explicitly explained its decision to separate the step-siblings and half-siblings, our review of the record convinced us that there was sufficient evidence to support the decision, and that the district court's order was adequately detailed to establish the basis for the decision. *Id*., ¶¶ 27, 30, 104 P.3d at 764.

[¶17] Given this precedent, we agree with Mother that the district court should have analyzed the effects of separating BHB from his half-siblings. It should have explained its reasons for doing so on the record. We conclude, however, that the district court did not commit reversible error in this case.

[¶18] As in *Aragon*, the record provides sufficient evidence to support the award of primary custody of BHB to Father. The evidence reveals that BHB's circumstances are distinct from those encountered in earlier cases regarding the separation of siblings. Mother, Father, and BHB lived together soon after his birth, but for no more than "a couple of months." BHB had lived with his younger half-sibling only since the baby's birth seven months previously. The two older half-siblings had lived with their biological father until approximately ten months prior to trial. Further, while the record is not clear on details, it appears that the Wyoming Department of Family Services removed the two older half-siblings from their biological father. The agency obtained legal custody, and placed them temporarily in Mother's care. The record does not indicate how long the older half-siblings will be with Mother. If the older children were removed from Mother's custody, BHB would be separated from them even if Mother were awarded primary custody of BHB.

[¶19] Also as in *Aragon*, the district court provided detailed explanations for its decision, both orally and in writing. It analyzed all of the factors required by Wyo. Stat. Ann. § 20-2-201(a), and recited the evidence and findings it considered in its analysis. We have frequently indicated that "the best interests of the child are of 'paramount concern' in decisions relating to child custody." *Arnott v. Arnott*, 2012 WY 167, ¶ 31, 293 P.3d 440, 454 (Wyo. 2012) (quoting *Cosner v. Ridinger*, 882 P.2d 1243, 1247 (Wyo.

5

1994)). Despite the fact that the district court did not explicitly address separating BHB from his step-siblings, its detailed analysis demonstrates that it carefully considered the best interests of BHB, and determined that those interests would be served by awarding primary custody to Father.

[¶20] The district court found that both Mother and Father were capable of providing adequate care for BHB, but when considering the relative competency and fitness of each parent as required by Wyo. Stat. Ann. § 20-2-201(a)(iii), it found that Father had "the advantage in terms of being the more competent and fit parent in this case." It was undisputed that Mother had been BHB's primary caregiver since his birth, but the district court also expressed several specific concerns about Mother's relative competency and fitness. As set forth below, all of those concerns are supported by evidence in the record.

[¶21] The court first expressed concern about Mother's cigarette smoking and its possible negative impacts on BHB's health. In her testimony, Mother stated that BHB has respiratory problems, and acknowledged that her smoking can "be a problem" for him. Nevertheless, she admitted that she smoked while pregnant with BHB, continued smoking throughout his life, and smoked while pregnant with her youngest child. Given this evidence, it was not unreasonable for the district court to find that Mother's smoking indicated she was "putting her own desires and her own needs above the health concerns of her son."

[¶22] The court was concerned about Mother's unwillingness to abide by court orders. Mother admitted that she violated the previous order prohibiting her from removing BHB from Laramie and Albany Counties, but now asserts that "there is little, if any, indication in the record that this unenforced violation has any effect on her fitness as a parent." However, the district court explained in its oral ruling how Mother's violation of the restraining order reflected on her fitness as a parent:

> I'm also concerned about [Mother's] unwillingness to abide by this Court's previous orders. She admitted to completely disregarding the Court's restraining order that prohibited her from removing the child from Laramie County or Albany County. She admits that she knew that. She moved the child anyway to Fremont County without seeking to get prior approval from this Court.
>
> I am very worried that [Mother] will not comply with any of the terms of this Court's orders as to custody and visitation going forward if she decides, for whatever reason, that they don't suit her or she doesn't like them.

The district court's concern was reasonable in light of the evidence presented.

6

[¶23]  The third concern expressed by the district court was that, in previous instances when Mother had moved with BHB, she failed to notify Father of their new location.  There is evidence to support this concern.  Father testified that there were periods of time when he did not know where mother and BHB were living.  During one such period there "was about a year when we didn't have any communication."  Wyo. Stat. Ann. § 20-2-201(a)(vii) requires the court to consider each parent's ability and willingness to respect the other parent's right and responsibilities.  As the district court reasonably explained, Mother's failure to let Father know where BHB was living "obviously interferes with [Father's] parental rights."

[¶24]  The final concern listed by the district court involved Mother's judgment as a parent.  This was based on evidence that Mother had returned her two older children to the custody of their biological father even though she was aware that he may have abused one of them.  As the district court explained:

> It is hard for the Court to fathom that any parent in that situation wouldn't [do] everything they possibly could do to protect their child, even if that meant challenging [the biological father] in Court to win custody of her child.  That failure to protect a child is something that greatly concerns this Court.

Again, there is evidence to support the district court's finding and, given the evidence, the district court's concern was not unreasonable.

[¶25]  As we previously indicated, not all of the district court's findings regarding Mother were negative.  The district court identified specific strengths of both Mother and Father.  It also expressed some concerns about Father's relative competency and fitness as a parent.  Ultimately, the district court weighed those strengths and weaknesses in making the custody determination.  Our observation in *Aragon*, ¶ 22, 104 P.3d at 762-63, is equally applicable here:

> While there were factors weighing in Mother's favor, there were similar factors weighing in Father's favor.  It is the district court's duty to weigh the evidence in making custody determinations.  Here, it appears from the record that the district court considered all the evidence in making its ultimate decision.  It must further be acknowledged that under the applicable standard of review, this court has an obligation to afford Father, as the prevailing party, every favorable inference while omitting any consideration of evidence presented by Mother, the unsuccessful party.

7

In this case, as well, the record reflects that the district court considered all of the evidence in making its ultimate finding and conclusion that "it is in the best interests of the minor child in this case that [Father] be the primary custodial parent." Based on the evidence in Father's favor and the reasonable inferences to be drawn from it, the district court's decision was not unreasonable, and does not constitute an abuse of discretion.

[¶26] Affirmed.