2017 WY 132

**Chrissy Lynn RANSOM, Appellant (Defendant),**

v.

**Christopher Ryan RANSOM, Appellee (Plaintiff).**

**S-17-0071**

Supreme Court of Wyoming.

November 14, 2017

---

Representing Appellant: Rennie Phillips Polidora of Jacobs•Polidora, LLC, Laramie, Wyoming

Representing Appellee: Erik J. Oblasser of Corthell and King, P.C., Laramie, Wyoming

Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.

DAVIS, Justice.

[¶1] Chrissy Lynn Ransom (Mother) appeals from a divorce decree, claiming the district court abused its discretion in awarding Christopher Ryan Ransom (Father) primary physical custody of their daughter. She also claims the district court abused its discretion when it denied her motion to bifur-

cate the trial to separate the property issues from child custody and support determinations. We find no abuse of discretion and affirm.

## ISSUES

[¶2] Mother states the issues for this Court's consideration as follows:

1. Whether the district court abused its discretion by improperly weighing the best interests of the child factors pursuant to Wyo. Stat. Ann. § 20-2-201(a) and awarding custody to Father.

2. Whether the district court abused its discretion by denying Mother's Motion to Bifurcate property distribution proceedings from child custody proceedings pursuant to W.R.C.P. 42(b).

[¶3] Father contends the district court did not abuse its discretion in awarding him custody or denying the motion to bifurcate. He also asks this Court to certify there was no reasonable cause for this appeal and award costs and attorney fees in his favor pursuant to W.R.A.P. 10.05(b).

## FACTS

[¶4] The parties were married in December of 2005 in Las Vegas, Nevada. Throughout the marriage, they resided in Laramie, Wyoming. Their daughter was born in 2009. She suffers from autism spectrum disorder.

[¶5] In 2012, the parties purchased Grand Avenue Pizza in Laramie for $377,000. Both parties worked at the restaurant, and during the course of their marriage, paid $100,000 toward the loan with money earned from the business.

[¶6] In January of 2016, Mother began an extra-marital affair. When Father discovered the affair in March, Mother left the child with Father and went to Pinedale to be with her new companion. Before she left, Mother wrote a note to the child explaining that she did not know when or how she would be able to return to Laramie.[1] Five days later, how-

---

1. The record on appeal contains none of the exhibits referenced in the trial transcript, leaving this Court to rely on witness testimony concerning those exhibits. W.R.A.P 3.05 provides for the transmission of the transcript and "necessary exhibits." The parties are responsible for designating the portions of the record necessary for an

ever, she returned to Laramie. By May of 2016, Mother was working and renting a residence in Laramie.

[¶7] Meanwhile, in April of 2016, Father had filed a complaint for divorce in which he sought primary legal and physical custody of the child. Father also sought an interim order giving him custody of the child while the divorce was pending, claiming that Mother intended to take the child and leave Laramie. Mother answered the complaint and counterclaimed for custody. The parties subsequently stipulated to a temporary plan giving the parties joint legal custody of the child, with Father having primary physical custody, and Mother having visitation on Tuesday after school until 8:00 p.m. and from the end of school on Thursday until Saturday at 8:00 p.m.

[¶8] The district court set the trial for November 18, 2016. On November 7, Mother filed a motion asking the court to bifurcate the child custody and visitation matters from the property issues. She claimed she had relied on Father to provide a valuation of the restaurant business, and had only recently received that valuation. She indicated that she questioned its accuracy and needed additional time to obtain her own appraisal. The district court denied the motion. The case proceeded to trial, and after hearing the testimony and counsels' arguments, the district court issued a decision letter finding it in the child's best interests to reside primarily with Father while awarding Mother the visitation in the parties' stipulated plan. The district court subsequently issued a decree of divorce consistent with its decision letter. Mother timely appealed from the district court's order.

## STANDARD OF REVIEW

[¶9] Custody and visitation are committed to the sound discretion of the trial court. *JCLK v. ZHB*, 2015 WY 95, ¶ 8, 353 P.3d 720, 721 (Wyo. 2015) (citing *Blakely v. Blakely*, 2009 WY 127, ¶ 6, 218 P.3d 253, 254 (Wyo. 2009)).

This Court has consistently recognized the broad discretion enjoyed by a district court in child custody matters. We will not interfere with the district court's custody determination absent procedural error or a clear abuse of discretion. In determining whether an abuse of discretion has occurred, our primary consideration is the reasonableness of the district court's decision in light of the evidence presented. We view the evidence in the light most favorable to the district court's determination, affording every favorable inference to the prevailing party and omitting from our consideration the conflicting evidence.

*JCLK*, ¶ 8, 353 P.3d at 721-21 (quoting *Durfee v. Durfee*, 2009 WY 7, ¶ 6, 199 P.3d 1087, 1089 (Wyo. 2009)).

[¶10] W.R.C.P. 42(b)[2] provides as follows:

(b) *Separate trials.*—The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues.

"We review a decision not to bifurcate a trial for an abuse of discretion, and reverse only if the district court's decision was outside the bounds of reason under the circumstances." *In re Kite Ranch, LLC*, 2010 WY 83, ¶ 33, 234 P.3d 351, 363 (Wyo. 2010) (citing *In re Conservatorship & Guardianship of CPR*, 2009 WY 76, ¶¶ 9-10, 209 P.3d 879, 883 (Wyo. 2009)).

## DISCUSSION

### 1. Custody

[¶11] In asserting that the district court abused its discretion when it awarded Father primary physical custody of their daughter, Mother focuses first on the court's statement in its decision letter that it was "not convinced of [Mother's] commitment to

appeal. They designated the entire trial transcript but none of the exhibits.

**2.** Effective March 1, 2017, W.R.C.P. 42(b) was revised and reorganized without significant changes.

remain in Laramie and no one inquired into her future intentions at trial." (Footnote omitted). The court noted Mother's "significant other still resides in the Pinedale, Wyoming area."

[¶12] Mother contends that no evidence was presented at trial to support the court's misgivings. She asserts that no one testified about her significant other's living situation, and that any testimony about her visiting him in Pinedale concerned the earlier time when the parties separated. She further asserts that although no one expressly questioned her about her future intentions, her testimony clearly showed that she is committed to staying in Laramie. She points to her testimony that she had a place to live and had been employed in Laramie since May of 2016, had obtained health insurance for her daughter through her employer's health plan as soon as she was eligible, had paid extra for dental and vision coverage, that she received a daycare discount and other benefits through her job, and that she had always planned to return to Laramie even when she was uncertain of her immediate plans after the separation.

[¶13] As the district court noted in its decision letter, courts are required to consider the following factors in determining the best interests of the child:

(i) The quality of the relationship each child has with each parent;

(ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;

(iii) The relative competency and fitness of each parent;

(iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;

(v) How the parents and each child can best maintain and strengthen a relationship with each other;

(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;

(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;

(viii) Geographic distance between the parents' residences;

(ix) The current physical and mental ability of each parent to care for each child;

(x) Any other factors the court deems necessary and relevant.

Wyo. Stat. Ann. § 20-2-201(a) (LexisNexis 2017).

[¶14] Quoting *Blakely*, ¶ 11, 218 P.3d at 256, the district court further noted:

No single factor is determinative. In fact, depending on the case, different factors will present a greater need for emphasis. The one constant is that the resolution must be in the best interests of the child in that particular family.

[¶15] The district court then considered and rejected Mother's request for a fifty-fifty custody arrangement. The court cited Wyoming cases holding that shared custody arrangements are not favored and are inappropriate when the evidence demonstrates that the parents have been unable to communicate and agree on issues relating to the child's best interest, citing *Buttle v. Buttle*, 2008 WY 135, ¶¶ 31, 39, 196 P.3d 174, 181, 183 (Wyo. 2008); *Reavis v. Reavis*, 955 P.2d 428, 432-33 (Wyo. 1998); and *Gurney v. Gurney*, 899 P.2d 52 (Wyo. 1995). The district court found the parties were unable to communicate amicably and resolve their parental issues. It also questioned whether shared custody was appropriate given the child's special needs and the importance to her well-being of a consistent schedule. In the context of Mother's request for shared custody, the district court expressed its uncertainty about Mother's commitment to remaining in Laramie.

[¶16] We find no abuse of discretion in the district court's ruling. The law in Wyoming is clear that shared custody is not favored "absent good reason" for such an arrangement. *Eickbush v. Eickbush*, 2007

WY 179, ¶ 11, 171 P.3d 509, 512 (Wyo. 2007) (citing *Martin v. Martin*, 798 P.2d 321, 322 (Wyo. 1990); *Feaster v. Feaster*, 721 P.2d 1095, 1098 (Wyo. 1986)). This is so primarily because of "the recognition that stability in a child's environment is of utmost importance to the child's well-being, and divided custody places the stability of a child's environment at risk." *Reavis*, 955 P.2d at 432. "[A] measure of instability is inherent" in shared custody arrangements. *Id.*[3]

[¶17] Father testified that "routine is key" for the child. He indicated that after Mother left, the child had a difficult time. She missed Mother, did not understand the situation, had a hard time listening, and was disruptive at school. He testified that he received an email from the child's teacher stating that she was emotional, defiant, and refused to do her work. According to Father, it took a couple of weeks after Mother returned to Laramie for the child to adjust to the situation and start to behave normally.

[¶18] He testified that the schedule the parties subsequently agreed to contributed to the child's improved behavior in school, and that as long as they followed that schedule, the child did well. Mother did not dispute Father's testimony. In fact, her testimony that she initially agreed it was in the child's best interest for Father to have primary custody because she did not have a place to live or employment suggests she recognized the child's need for stability. Given the testimony, we conclude the district court reasonably decided that rather than imposing a new and different schedule that likely would have caused disruption and instability, it was in the child's best interest to continue with the arrangement that had by then been in place for months pursuant to the parties' agreement.

[¶19] We disagree with Mother's assertion that the district court improperly expressed uncertainty about her commitment to staying in Laramie. Mother testified she had considered taking the child to Jackson after the separation because her family support system was there. She acknowledged a conversation with a co-worker in which she stated "I'll be back up there on Sunday looking for a daytime job and place to stay or just taking her to Jackson and staying with my parents until we go to court." She also acknowledged she had discussed moving in with her paramour in the Pinedale area.

[¶20] While it is true that this testimony appears to involve the time frame before Mother found a place to live and employment in Laramie, it was not improper for the district court to consider it, along with the other testimony, in exercising its best judgment and discretion to arrive at a custody determination in the best interest of the child. Given Mother's request for shared custody, the issue of whether she planned to stay in Laramie was relevant—custody could not be shared between parents who might live hundreds of miles apart.

[¶21] Mother also takes issue with the district court's emphasis on what it characterized as her "decision, albeit temporary, to abandon" her daughter. She contends Father kicked her out of the house and did not want her working at the restaurant, and that with no place to live and no job, she had no choice but to leave town. She argues that she left her daughter with Father because she knew it was in the child's best interest to stay in the home, continue in school, and have the stability that was not available to Mother at the time.

[¶22] It was not improper for the district court to consider Mother's actions after Father discovered her extra-marital relationship. Father testified it was his understanding from his conversations with Mother and the note she left for the child that she was moving to Pinedale and not coming back to Laramie except to visit. Although Mother testified she was not planning to leave the child permanently, she also acknowledged she did not know at the time when or how she would be able to return to Laramie. The

---

3. The special concurrence makes a valid point that perhaps it is time for the Court to reconsider whether we should have a presumption against shared custody. However, the issue of whether such a presumption should continue was not briefed by the parties, and deciding that point would not affect the outcome here. We will therefore reserve that review for another case and another day.

note she left for the child also showed her uncertainty about returning to Laramie. The district court reasonably considered this evidence, along with the other testimony presented, in making its custody determination.

[¶23] Mother next complains that the district court placed undue emphasis on her one-time temporary decision to leave Laramie after Father discovered her extra-marital relationship. She points to evidence showing Father to be inflexible and controlling, behavior the district court acknowledged was unacceptable and not in accord with positive co-parenting. Given that evidence, Mother contends the district court should not have given Father primary custody of the child.

■ [¶24] We reiterate that district courts have broad discretion in child custody matters, and this Court will not interfere with their custody determinations absent procedural error or a clear abuse of discretion. The evidence showing that Mother returned to Laramie, found housing and employment, and regularly exercised visitation with the child was favorable to her. Likewise, the evidence showing that Father stayed in Laramie with the child when Mother left, rearranged his work schedule and hired more staff so he could be available to the child, and established a stable and consistent schedule for the child after Mother left was favorable to him. While the evidence also showed that Father was rigid and controlling in his interactions with Mother, testimony also showed that Mother placed inappropriate messages on Facebook concerning Father that the child discovered and showed to him.[4] We have said:

> Seldom if ever does a divorce court have a choice between a parent who is all good on one side and a parent who is all bad on the other side. The matter of awarding custody is a comparative proposition wherein the court exercises its best judgment and discretion and awards custody to one parent or to the other, according to what the court

thinks is for the best interest and welfare of the children.

*Hayzlett v. Hayzlett*, 2007 WY 147, ¶ 13, 167 P.3d 639, 643 (Wyo. 2007) (quoting *Wilson v. Wilson*, 473 P.2d 595, 598 (Wyo. 1970)). Viewing the record in its entirety, and considering all the testimony presented, we find no abuse of discretion in the district court's award of custody to Father. In light of the child's special needs and the importance of her having a known and set schedule like the one the parties had followed for over a year, we find the district court's order particularly reasonable.

## 2. Motion to Bifurcate

■ [¶25] Mother filed her motion to bifurcate eleven days before trial. She alleged she relied on Father for a valuation of the business, and upon receiving it just two weeks before trial, questioned its accuracy and decided a second valuation was necessary.[5] She was unable to obtain an appraisal prior to trial, and therefore filed her motion to bifurcate. She asserts the district court's denial of the motion caused prejudice because she was unable to present evidence as to the value of the business.

[¶26] When Father filed his complaint for divorce in April 2016, the proper division of marital assets and debts, including the business, was placed at issue. Although they had seven months to arrange expert or other credible evidence to establish the value of the business, neither party managed to do so before trial. Mother apparently did not even try, and instead relied on Father to provide a credible valuation. When Mother sought an extension of time two weeks before trial to obtain an appraisal, it was not outside the bounds of reason for the district court to deny the motion. Any prejudice Mother suffered was the result of her own failure to act in a timely manner to obtain an expert opinion to establish a value for the business and develop evidence that she was entitled to a

---

4. Like the Mother's note to the child, the Facebook messages were introduced as exhibits at trial but were not included in the record on appeal. From the testimony about those messages, it is clear they were highly inappropriate.

5. It is not clear from the record what valuation Mother received from Father. Father presented no expert testimony or report of valuation at trial. The only evidence presented as to the valuation of the business was Father's testimony as to how he calculated its value.

certain portion of its value. Mother presented absolutely no evidence of its value or to support the claim she makes in this Court that she was entitled to a portion of the value.

[¶27] Although Mother frames her second issue on appeal as an abuse of discretion by the district court in denying the motion to bifurcate, she also takes issue with the court's actual decision allocating the entirety of the business, assets and debts alike, to Father. Because the parties purchased the business during the marriage, they both contributed to its success and they used marital funds to pay down the loan. Mother therefore contends she was entitled to compensation for her contributions.

[¶28] Father testified that he estimated the business had a negative net worth at the time of trial of $95,728. He arrived at that estimate by totaling inventory, equipment and cash to arrive at $181,272 total assets. He testified the liabilities consisted of an outstanding loan in the amount of $277,000. Subtracting liabilities from assets, he valued the business as having a negative net worth of $95,728. He wanted the district court to divide this negative amount, so that Mother would have to pay him half of it. As already noted, Mother presented no evidence of the business' value.

[¶29] The district court concluded that Father's valuation was not accurate because it failed to take into account factors suggesting a greater value. First, Father failed to include in his list of assets the goodwill value of an established restaurant and the value of the liquor license. Second, although Father testified the business averaged profits of $60,000 annually, he did not factor that into his valuation. Finally, the parties testified they used income from the business to finance vacations and pay off the marital home and at least one vehicle. Noting that neither party presented expert or other credible testimony as to the value of the business, the district court concluded the most accurate value was the $377,000 purchase price [6] less the remaining debt on the loan, or a current negative net worth of $27,000.

[¶30] Based upon Father's testimony that managing and running the business was his livelihood and provided him the flexibility needed to care for the child, the district court awarded it entirely to him, assets and liabilities included. While it is true the district court did not compensate Mother for her contributions to the business during the marriage, it also did not assign her any liability for the business debt incurred during the marriage, or for the shortfall in its value. The district court did, however, award Mother $92,500, one-half of the value of the marital home.

[¶31] As we have said, property settlements present complex problems requiring district courts to assess the respective merits and needs of the parties. *DeJohn v. DeJohn*, 2005 WY 140, ¶ 11, 121 P.3d 802, 807 (Wyo. 2005) (citing *Odegard v. Odegard*, 2003 WY 67, ¶ 10, 69 P.3d 917, 920-21 (Wyo. 2003)). Where, as here, neither party presented expert or other credible evidence on the valuation of the business, the district court was left to make its own assessment of the value from the limited evidence presented. We cannot say the district court's determination was unreasonable.

### 3. W.R.A.P. 10.05(b) Certification

[¶32] W.R.A.P. 10.05(b) authorizes this Court to certify that there was no reasonable cause for an appeal and award attorney's fees and damages as part of the costs of a case. Father asks the Court to do so in this case, claiming that Mother's brief contains misrepresentations and that she ignored or failed to perform sufficient research to determine whether her appeal had merit, and that therefore her brief was not supported by cogent argument or adequate citations to the record.

[¶33] We are reluctant to order sanctions under Rule 10.05 and will do so only in rare circumstances. *Jackman Construction, Inc. v. Rock Springs Winnelson Co., Inc.*, 2016 WY 118, ¶ 39, 385 P.3d 311, 321 (Wyo. 2016) (citing *Grynberg v. L & R*

---

6. The base purchase price was $250,000, but the Ransoms agreed to pay an additional $127,000 in built-in interest due to an agreement with the seller to finance the bulk of the sale.

*Exploration Venture*, 2011 WY 134, ¶ 30, 261 P.3d 731, 739 (Wyo. 2011); *Amen, Inc. v. Barnard*, 938 P.2d 855, 858 (Wyo. 1997)). We are especially reluctant to award sanctions when, as here, the appeal challenges a discretionary decision of the district court. *Wood v. Wood*, 964 P.2d 1259, 1268 (Wyo. 1998) (citing *Russell v. Russell*, 948 P.2d 1351, 1356 (Wyo. 1997)).

[¶34] Although there are deficiencies in this appeal, not the least of which is that neither party made sure the exhibits referenced in the testimony were part of the appellate record, we decline to award sanctions.

[¶35] We find no abuse of discretion and affirm the district court's orders.

BURKE, Chief Justice, specially concurring.

[¶36] I concur in the result reached by the majority, but write separately because I am troubled by one aspect of the opinion. The majority is correct that shared custody, in its various forms, is not favored in Wyoming law. I believe, however, that a presumption against shared custody is no longer appropriate.

[¶37] This presumption is inconsistent with the statutory directive that "[c]ustody shall be crafted to promote the best interests of the children, and may include any combination of joint, shared or sole custody." Wyo. Stat. Ann. § 20-2-201(d) (LexisNexis 2015). Moreover, this presumption is out of date. Many states that formerly recognized a presumption against shared custody have, through legislation or court decision, rejected it. Maritza Karmely, *Presumption Law in Action: Why States Should Not Be Seduced into Adopting a Joint Custody Presumption*, 30 Notre Dame J.L. Ethics & Pub. Pol'y 321, 325 (2016). As explained in a thoughtful opinion from the Supreme Court of Iowa:

[I]n light of the changing nature of the structure of families and challenges to the sweeping application of psychological par-

ent attachment theory, we believe the joint physical care issue must be examined in each case on the unique facts and not subject to cursory rejection based on a nearly irrebuttable presumption found in our prior cases. ... Any consideration of joint physical care, however, must still be based on Iowa's traditional and statutorily required child custody standard—the best interest of the child. *See* Iowa Code § 598.41(5)(*a*). Physical care issues are not to be resolved based upon perceived fairness to the *spouses*, but primarily upon what is best for the *child*. The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity.

*In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007) (emphasis in original). *See also Taylor v. Taylor*, 306 Md. 290, 303, 508 A.2d 964, 970 (1986) ("We emphasize that in any child custody case, the paramount concern is the best interest of the child. ... The availability of joint custody, in any of its multiple forms, is but another option available to the trial judge."); *Beck v. Beck*, 86 N.J. 480, 486–88, 432 A.2d 63, 65–66 (1981); *Dodd v. Dodd*, 93 Misc.2d 641, 646, 403 N.Y.S.2d 401, 404–05 (1978).

[¶38] In Wyoming, as in many other states, the fundamental consideration in determining child custody is "the best interests of the children." Wyo. Stat. Ann. § 20-2-201(a). We should not presume that shared custody is contrary to the best interests of the children. Shared custody should be considered on an equal footing with other options available to trial courts making difficult child custody decisions.