FOX, Justice.
[¶1] Appellee, Ryan Swan (Father), petitioned the district court to modify the custody, visitation, and child support provisions of his divorce decree. After a full evidentiary hearing, the district court, on its own motion, entered a temporary custody modification order rather than a final order. The temporary order was, in effect, a trial co-parenting plan that would become permanent after seven months unless either parent first requested a new hearing to establish that it was "unworkable." Father filed such a motion, and the district court held a second evidentiary hearing, after which the district court entered a final order granting primary custody of the children to Father. The district court also held Appellant, Amy Womack (Mother), in contempt of court for violating terms of the initial temporary order. Mother appeals both decisions. Although we find that the district court abused its discretion when it entered the temporary custody order, we affirm the district court's permanent custody modification. However, we reverse the contempt finding against Mother and remand Mother's contempt motion against Father to the district *131 court for further proceedings consistent with this opinion.
ISSUES
[¶2] Mother presents two issues, which we rephrase as follows:
1. Did the trial court erroneously issue a temporary order instead of a final order following an evidentiary hearing on the merits of the case?
2. Did the trial court erroneously hold Mother in contempt and factor that contempt into its decision to modify custody?
FACTS
The Temporary Order
[¶3] In April 2009, after a five-year marriage and the birth of two children, Mother and Father divorced on stipulated terms granting Mother the primary care, custody, and control of the children subject to reasonable visitation by Father. Mother states that "that was the last time the parties agreed upon anything" and the formidable record of contentious post-decree litigation corroborates this assertion. In March 2015, Father filed a Verified Petition to Modify Custody, Visitation and Child Support. After approximately nine months of discovery and competing pretrial motions, the district court held a 2½-day hearing in January 2016. At the hearing, the court heard the testimony of five lay witnesses and four expert witnesses, and received approximately 175 exhibits.
[¶4] Father sought primary custody of the children, alleging, among other things, that Mother was systematically alienating the children from him[1] and suffered from a drinking problem. To support his allegation of alienation, Father introduced numerous emails, text messages, and audio recordings documenting Mother's behavior. Among many examples, Mother told or texted Father: "I'm going to tell the kids that you don't want to see them ... [and] that you're choosing your girlfriend over them"; "I do not like [your girlfriend] and will make sure the kids don't either"; "I'll make sure the kids know you're choosing the b**** over them." Additionally, Mother would not allow the children to take their stuffed animals to Father's home and, during Father's visitation time, Mother texted pictures of herself with the stuffed animals to the children with the message "Puppy and Lamby miss you ... [w]e want to have a playdate with you." Father also presented evidence that Mother, while insisting that Father contact the children only via the daughter's cell phone, blocked his phone number on that phone-thus explaining why the children were not answering his calls. To support his allegation that Mother had a drinking problem, Father presented Mother's bank records showing regular alcohol purchases, financed by either child support payments or her retirement savings, and Mother's own testimony that she had been arrested three times for DWUI. Father had recently remarried and believed that his new, blended family offered a stable support system for the children.
[¶5] Mother, on the other hand, sought to keep primary custody of the children and to reduce Father's visitation time with the children, alleging that Father was a controlling, abusive, and dangerous person who became interested in becoming the primary custodial parent only after Mother sought an increase in child support. Mother denied that she had a drinking problem. Mother admitted that she had engaged in alienating behavior but, with ongoing therapy, she was "taking steps to change some of these behaviors."
[¶6] Approximately four weeks after the hearing, the district court issued a "Temporary Order for Modification of Visitation" (the Temporary Order). The district court found four material changes of circumstances: Mother's diagnosis of breast cancer ; Mother's unemployment during cancer treatment; Father's remarriage that brought step-siblings into his home; and-"the biggest material change in circumstances"-Mother's behaviors that were "likely to result in" alienating the children from their Father. The district court found that Father also engaged in alienating behavior, and "this is a *132 close call." The district court stated: "With all the instability the children have experienced in the past few years, the Court is reluctant to add to [the children's] burden by transferring primary custody away [from Mother]," yet "[a]t the same time, if the relationship between [Father] and the children is actually being threatened, the Court may not have any other options." Ultimately, the court decided that, although Mother's behavior was "likely to result in" harm, the harm had not yet resulted (the children had not rejected Father), and the court could not justify awarding custody to Father at this time.
[¶7] The district court therefore determined that "the most appropriate solution at this time" was a temporary one (the court's "last effort to help the parties co-parent their children"). Under the Temporary Order, the parents would continue to share time equally with the children and Mother would continue to be the primary custodial parent, but, in order to minimize conflict, the court changed the visitation schedule to reduce the number of exchanges. The order would remain in place for over seven months until October 2016, at which time it would become final-unless, prior to that date, either party requested a hearing to "establish that this custody arrangement is unworkable." At such a hearing, if the parties were "unable to agree that this arrangement is in the best interests of the children," or if "parental alienation continues to occur," the court would enter a "final order" which would "determine[ ] the long-term custody of the children" and "likely decrease the visitation of one of the parties." The district court also found that "quite possibly" Mother had an alcohol problem that "may have been a significant factor in exacerbating the confrontations between the parties." For this reason, the district court also ordered Mother "not to consume any alcohol when the children are in her custody."
The Final Order
[¶8] Five months later, Father requested a hearing pursuant to the Temporary Order. There followed approximately 30 pretrial filings by the parties, including contempt motions from each party alleging various violations of the district court's orders. In March 2017-more than one year after entering the Temporary Order and nearly two years after Father filed the initial petition-the district court held a second hearing on Father's petition for modification. The parties presented 10 witnesses and introduced approximately 46 exhibits. Along with witness testimony, Father presented new audio recordings and photographs evidencing Mother's continued attempts to alienate the children from Father and her alcohol consumption in the presence of the children. Father's expert witness testified that, due to Mother's alienation, the children (now ages 9 and 12) had begun to reject Father. On these grounds, Father requested primary custody of the children and a substantial period of no contact between Mother and the children. Mother denied that the children were rejecting Father, denied consuming alcohol while the children were in her care, and contended that Father had violated various terms of the Temporary Order. Mother requested the court to limit Father's visitation to alternating weekends.
[¶9] Approximately one month later, the district court issued its Decision and Order Modifying Custody (the Final Order). The district court stated that it had intended the Temporary Order to be a "message" or a "signal" to Mother "that her alienating and controlling behaviors would not be tolerated," and Mother "did not heed that warning." The court found a material change in circumstances since the entry of the Temporary Order: the likelihood of harm to the children due to Mother's alienating behavior had "switched from potential to palpable"-in other words, the children were now rejecting Father. After considering the factors provided by Wyo. Stat. Ann. § 20-2-201(a), the district court granted primary custody of the children to Father and reduced Mother's visitation. The district court also found Mother to be in contempt of the court's Temporary Order due to her consumption of alcohol in the presence of the children and her continued alienating behavior. Mother timely appealed the district court's modification of custody and its finding of contempt.
*133 DISCUSSION
I. Did the trial court erroneously issue a temporary order instead of a final order following an evidentiary hearing on the merits of the case?
[¶10] Mother alleges that the district court erred by entering a temporary custody modification order after a full evidentiary hearing. As a result of the court's error, she argues, the Temporary Order: (1) constituted a final judgment, precluding subsequent adjudication of the same issues under the doctrine of res judicata; and (2) created a modification procedure that denied her due process when the district court held a second hearing to permanently modify the custody of the children. We will first consider whether the district court improperly issued the Temporary Order. We will then address whether the transgression resulted in a final judgment, precluding a subsequent adjudication of the same issues under res judicata, or a violation of due process.
A. The Temporary Order
[¶11] Mother did not challenge the validity of the Temporary Order below, and usually we do not address an issue raised for the first time on appeal. Tracy v. Tracy , 2017 WY 17, ¶ 22, 388 P.3d 1257, 1262 (Wyo. 2017). However, we make an exception for issues "so fundamental they must be considered, or if they concern matters of jurisdiction." Id. (citation omitted).[2] We have recognized that the right to familial association is a fundamental issue that permits us to consider Mother's claim. Id. at ¶¶ 22, 23, 388 P.3d at 1262. We review issues of jurisdiction and statutory interpretation de novo. MF v. State , 2013 WY 104, ¶ 6, 308 P.3d 854, 857 (Wyo. 2013). If we find that the district court had the authority to issue the Temporary Order modifying child custody, we review the order for abuse of discretion. Gjertsen v. Haar , 2015 WY 56, ¶ 11, 347 P.3d 1117, 1122 (Wyo. 2015). "In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did." Ready v. Ready , 906 P.2d 382, 384 (Wyo. 1995) (citations omitted).
[¶12] Wyo. Stat. Ann. § 20-2-112(b) (LexisNexis 2017) empowers district courts to issue temporary orders in a custody proceeding, "[o ]n the application of either party .... " This language suggests that the district court may not issue a temporary order on its own motion. However, we have explained that,
because the rules and statutes governing courts are seldom all-encompassing, courts have been held to have inherent power to take such actions as may be necessary to perform their duties, so long as the exercise of that power is a reasonable response to specific problems and needs in the fair administration of justice and it does not contradict any express rule or statute. Dietz v. Bouldin , --- U.S. ----, ----, 136 S.Ct. 1885, 1891-92, 195 L.Ed.2d 161 (2016). This Court has also held that courts have inherent equitable authority to enter *134 custody orders, even in the absence of a statute that provides that specific authority. See, e.g ., Marquiss v. Marquiss , 837 P.2d 25, 33 n.5 (Wyo. 1992) ; Urbach v. Urbach , 52 Wyo. 207, 224-26, 73 P.2d 953, 960-61 (Wyo. 1937)....
Secondary authorities also recognize that courts have the power to enter temporary custody orders when to do so is in the best interests of the child. 2 Jeff Atkinson, Modern Child Custody Practice § 12-20 (2d ed. 2014) (brief temporary orders may minimize disruption to a child that might come from a change of custody after a full hearing); 24A Am. Jur. 2d Divorce and Separation § 857 (2008) ("A court may make a temporary change of custody when considering an application to change it permanently.").
Tracy , 2017 WY 17, ¶¶ 25-26, 388 P.3d at 1263. However, "[t]he fact that such an inherent power exists does not mean that it is appropriate to use it in every case. Courts should exercise their inherent power with restraint and discretion so as to avoid sacrificing one vital interest for another." Id. at ¶ 27, 388 P.3d at 1263 (citing Dietz v. Bouldin , --- U.S. ----, 136 S.Ct. 1885, 1893, 195 L.Ed.2d 161 (2016) ).
[¶13] In exercising its discretion to formulate parenting arrangements, there may be a circumstance for which a district court's sua sponte temporary order is a reasonable response to specific problems and needs in the fair administration of justice. However, this case presents no such circumstances. After a full evidentiary hearing, the district court, upon its own motion, issued a temporary order as a sort of probationary custody arrangement for over seven months before entering a final order. This is not an appropriate use of a temporary order. The district court may have believed it to be in the best interests of the children to make one "last effort to help the parties co-parent their children" by sending a "message" or a "signal" to Mother to change her ways, but, by using a temporary order for this purpose, it sacrificed an interest vital to the children: their stability.
[¶14] Stability is of the "utmost importance to the child's well-being," Williams v. Williams , 2016 WY 21, ¶ 30, 368 P.3d 539, 549 (Wyo. 2016) (citation omitted), especially when the child is caught in the upheaval of divorce and the volatility of ongoing, post-decree litigation. For this reason, "temporary orders should be for a relatively short period of time, such as the period necessary to conduct pretrial investigations and proceed to trial." Tracy , 2017 WY 17, ¶ 33, 388 P.3d at 1264 (citing 2 Jeff Atkinson, Modern Child Custody Practice § 12-20 (2d ed. 2014) ). "Appellate courts discourage use of open-ended 'temporary' custody orders ... for the purpose of experimenting with custody arrangements." 2 Atkinson, supra , § 12-20 (citations omitted). Temporary custody orders are intended to survive only "during the pendency of the action." Wyo. Stat. Ann. § 20-2-112(b). The district court here likely acted with the belief that the temporary order might enhance stability for the children, by keeping the shared custody arrangement in place and motivating Mother to stop drinking and cease her alienating conduct. But we have rejected courts' attempts to make better parents out of the parties by imposing certain custody arrangements. "Blind hope that a joint custody agreement will succeed, or that forcing the responsibility of joint decision-making upon the warring parents will bring peace, is not acceptable." Reavis v. Reavis , 955 P.2d 428, 434 (Wyo. 1998) (quoting Taylor v. Taylor , 306 Md. 290, 508 A.2d 964, 972 (1986) ). In this case, the best interests of the children would have been better served by finality than they were by extending the process. Howard v. Howard , 124 N.H. 267, 469 A.2d 1318, 1322 (1983), overruled on other grounds by Ross v. Gadwah , 131 N.H. 391, 554 A.2d 1284 (1988), (citing C. Douglas, 3 New Hampshire Practice: Family Law 201 (1982) (stating that a custody order subject to review in six months on a party's motion "is not the preferred procedure in custody cases. The emotional trauma that children are subject to during custody disputes can have long-lasting psychological effects and thus, should be avoided whenever possible") ); Ellenberger v. Ellenberger , 63 N.C.App. 721, 306 S.E.2d 190, 191 (N.C. Ct. App. 1983) ("The requirement of substantial change [i.e., the interest of finality] is an effort to lend 'such stability as would end the *135 vicious litigation so often accompanying such contests. ...' " (citation omitted) ); Virginia A. Petersen, In Re Marriage of McDole: Modifying Child Custody by Ignoring Statutory Standards , 69 Wash. L. Rev. 1143, 1145 (1994) (stating, in a discussion of the Uniform Marriage and Dissolution Act, that "[f]inality in custody is important because custodial changes are highly disruptive to children .... exposing children to continual relitigation is detrimental to the stability of their environment" (citations omitted) ); Castle v. Simmons , 120 Nev. 98, 86 P.3d 1042, 1047 (2004) (finality of custody orders supports stability for the children).
[¶15] In Buttle v. Buttle , the district court entered a custody order, which left open the question of where the four-year old child would attend school. 2008 WY 135, ¶¶ 1, 14, 196 P.3d 174, 175, 177-78 (Wyo. 2008). The district court stated that, if the parents could not resolve it themselves, it would resolve the question when the child reached school age. Id. at ¶ 14, 196 P.3d at 177-78. We disapproved, stating that, in the context of parents who had not shown the ability to "communicate effectively or cooperatively resolve disputes," a "desire to give a child equal time with each parent" does not justify a temporary shared custody arrangement because it "undermines [ ] the child's best interest and his need for a stable environment." Id. at ¶ 42, 196 P.3d at 184. Here, for the same reason, the district court abused its discretion.
[¶16] Our remedy for the district court's abuse of discretion would be to remand for the entry of a final order. However, a final order is already in place. We therefore limit our examination to whether the district court's abuse of discretion rendered the Final Order void under res judicata or violated Mother's right to due process.
B. Res Judicata
[¶17] Mother argues that the Temporary Order was a final order, which precludes its relitigation under the doctrine of res judicata. Determination of whether the doctrine of res judicata applies is a question of law, which we review de novo. Platt v. Platt , 2014 WY 142, ¶ 27, 337 P.3d 431, 439 (Wyo. 2014) (citations omitted). Res judicata bars litigation of issues that were or could have been determined in a prior proceeding. Majors v. State , 2017 WY 39A, ¶ 7, 401 P.3d 889, 890 (Wyo. 2017). The responding party must show, among other things, that the prior proceeding terminated with a final or appealable order.[3] Platt , ¶ 27, 337 P.3d at 439. "Tentative or incomplete action, avowedly subject to further consideration, does not alone suffice for appeal or res judicata." Id. (citing 18A Charles Alan Wright et al., Federal Practice and Procedure § 4427 (2d ed. updated 2014) ); see also Restatement (Second) of Judgments § 13 (1982) ("Finality will be lacking if an issue of law or fact essential to the adjudication of the claim has been reserved for future determination ....").
[¶18] The Restatement (Second) of Judgments cautions that a litigant must allege the preclusive effect of a prior judgment while the new action is pending:
The considerations of policy which support the doctrine of res judicata are not so strong as to require that the court apply them of its own motion when the party himself has failed to claim such benefits as may flow from them. Accordingly, when a prior judgment is not relied upon in a pending action in which it would have had conclusive effect as res judicata, the judgment in that action is valid even though it is inconsistent with the prior judgment .
Restatement (Second) of Judgments, supra , § 15 (emphasis added). "Indeed, the later of ... two inconsistent judgments is ordinarily held conclusive in a third action even when the earlier judgment was relied on in the second action and the court erroneously held that it was not conclusive." Id. This policy is reflected in our rules of civil procedure, which require a litigant to allege res judicata as an affirmative defense in a responsive *136 pleading. W.R.C.P. 8(c)(1). Requiring res judicata to be asserted at trial accords with this Court's general rejection of arguments made for the first time on appeal. Gumpel v. Copperleaf Homeowners Ass'n, Inc. , 2017 WY 46, ¶ 32 n.7, 393 P.3d 1279, 1291 n.7 (Wyo. 2017) ("Our precedent is clear that an argument may not be made for the first time on appeal. ... This rule holds true whether it be legal theories or issues never formally raised in the pleadings nor argued to the trial court." (internal citations and quotation marks omitted) ).
[¶19] If Mother considered the Temporary Order to have been a final order, there were several options available to her. She could have appealed the order or petitioned for review under W.R.A.P. 13.[4] She could have responded to Father's motion for a hearing on the Temporary Order or otherwise alleged below that the district court was precluded from reconsidering the terms of the Temporary Order. However, Mother fully engaged in pretrial discovery and motions practice and disclosed lay witnesses, expert witnesses, and exhibits. At the hearing, Mother sought a new parenting arrangement, testifying that the terms of the Temporary Order were not in the best interests of the children. Res judicata does not allow a litigant to willingly relitigate a matter and then seek to revive the previous judgment when the result of the new judgment is not to her liking. Mother's failure to rely on the doctrine of res judicata at the district court precludes her from relying on its principles to invalidate the subsequent, Final Order on appeal.[5]
C. Due Process
[¶20] Mother contends that the district court denied her due process because it "forced" her into a second trial on the merits, without providing her notice that custody of the children was subject to modification. Because we afford district courts considerable discretion in conducting hearings and trials, we review the sufficiency of process in a custody modification hearing for an abuse of discretion. ELA v. AAB , 2016 WY 98, ¶ 20, 382 P.3d 45, 50 (Wyo. 2016). "The touchstones of due process are notice and the opportunity to be heard. With regard to the amount of process due, we have explained that the notice and the opportunity to be heard must be appropriate to the nature of the case." Id. at ¶ 21, 382 P.3d at 50 (citations omitted). The opportunity to be heard must be meaningful. Goss v. Goss , 780 P.2d 306, 310 (Wyo. 1989).
[¶21] Mother first claims that, because the principles of res judicata rendered the Temporary Order to be a final order, Father should have had to show a material change of circumstances since the Temporary Order to win modification of the Temporary Order's terms. See Wyo. Stat. Ann. § 20-2-204(c) (LexisNexis 2017). However, as discussed above, Mother did not assert at the district court that the Temporary Order should have conclusive effect under the principles of res judicata and she cannot rely on the assertion now to impose retroactively the requirements of § 20-2-204(c). See supra ¶¶ 17-18.
[¶22] Mother next alleges that the Temporary Order itself did not notify her that she could lose primary custody of the minor child. However, the Temporary Order could not be more clear:
If this temporary custody arrangement is disagreeable to the parties, or parental alienation continues to occur, the Court will be forced to enter a final order determining the long-term custody of the children. Both parties have presented valid arguments for why they should be or continue *137 to be the primary custodian of the children. This temporary order is the Court's last effort to help the parties co-parent their children, and is believed to be in the best interests of the children. If this temporary solution fails to meet the needs of the parties, the Court will be forced to enter a final ruling on custody. This would likely result in one of the parties having substantially decreased visitation.
We find that the Temporary Order gave notice to the parties that a subsequent, final order of the district court could modify the custody of the children.[6]
[¶23] Finally, Mother claims that Father's "Request for Setting" of a hearing pursuant to the Temporary Order neither set out the issues to be litigated nor conformed to the requirements of the Temporary Order. Father's "Request for Setting" stated, in its entirety:
The undersigned attorney for Defendant, Ryan Swan, hereby requests a one (1) day hearing on the Court's Temporary Order for Modification of Visitation in the above-captioned matter.
WHEREFORE, Defendant respectfully requests this Court schedule a one (1) day hearing on the Court's Temporary Order for Modification of Visitation in the above-captioned matter.
The district court's Notice Setting Hearing is not in the record.
[¶24] The Request for Setting failed to state with particularity the grounds for the motion. See W.R.C.P. 7(b)(1)(B). However, approximately eight months passed between the filing of the request and the hearing, thus providing Mother ample opportunity to file a motion for clarification. See ELA , 2016 WY 98, ¶ 23, 382 P.3d at 50 (finding due process was met because, among other things, "[i]f Father had any question as to what would be heard at the hearing, a motion for clarification or call to the district court could have cleared up any confusion ... and he had more than enough time to prepare"). The record indicates that Mother did not file a motion for clarification or any other response to the request.
[¶25] In the months leading to the hearing, Mother was fully engaged in the proceeding. She filed motions for equal allocation of time, to allow telephonic testimony, for sequestration of witnesses, for in camera interview of the children, to strike one of Father's witnesses, to strike Father's audio recordings of Mother and the children, and to strike Father's exhibits. Approximately six weeks before the hearing, she filed her witness and exhibit list, along with pretrial disclosures. She filed expert disclosures more than three months before the hearing. Father also filed Rule 26 disclosures and supplemental disclosures. At the hearing, Mother presented 5 witnesses and introduced 31 exhibits. In sum, Mother had a meaningful opportunity to prepare and to be heard. While the district court abused its discretion in issuing a temporary order, it did not result in a violation of Mother's due process rights.
II. Did the trial court erroneously hold Mother in contempt and factor that contempt into its decision to modify custody?
[¶26] Prior to the second hearing, Mother filed a contempt motion, alleging that Father had violated the divorce decree by refusing to reimburse her for the children's counseling expenses and the cost of the children's flu shots. The district court issued an order to show cause upon Mother's motion and set the hearing to take place at the same time as the modification hearing. Father filed two contempt motions which alleged various violations of the Temporary Order, including Mother's continued alienating behavior and her consumption of alcohol while the children were in her custody. The district court did not issue an order to show cause upon either of Father's motions.
[¶27] The parties presented evidence that related to their contempt motions at the second hearing. The court admitted copies of *138 Mother's unreimbursed bills for counseling and flu shots. Mother's counsel cross-examined Father on the bills, and Father admitted that he had not reimbursed Mother, but testified that his refusal to do so was justified. Father presented a witness who testified that he had observed Mother at a Laramie hotel ordering and drinking wine with the children present, which was corroborated by photographs. Mother testified that the wine was non-alcoholic. However, the hotel's food-and-beverage manager later testified that the hotel did not serve non-alcoholic wine. Father also presented substantial evidence of Mother's continued alienating behavior.
[¶28] In the Final Order, the district court found that Mother was drinking wine "which was NOT non-alcoholic, in the presence of her children in willful violation of the Temporary Order ." The court also found that Mother "has continued her alienating behaviors." The district court factored these findings into its decision to hold Mother in contempt of court.
A. Father's Contempt Motions Against Mother
[¶29] Mother argues that the district court violated both the statutory requirements of Wyo. Stat. Ann. § 20-2-204(a) and Mother's right to due process by holding her in contempt of court. To enforce its orders, "[a] court has the inherent power to punish contempts of court and discretion to determine what sanction is appropriate." Waterbury v. Waterbury , 2017 WY 11, ¶ 9, 388 P.3d 532, 535 (Wyo. 2017) (quoting Stephens v. Lavitt , 2010 WY 129, ¶ 18, 239 P.3d 634, 639 (Wyo. 2010) ). This includes the authority to award a judgment for money damages. Id. (citing Walker v. Walker , 2013 WY 132, ¶ 39, 311 P.3d 170, 178 (Wyo. 2013) (district court appropriately awarded a judgment for amounts owed under a decree of divorce) ).
This Court does not interfere with an order holding a party in civil contempt of court in a domestic relations case "absent a serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion." Roberts v. Locke , 2013 WY 73, ¶ 14, 304 P.3d 116, 120 (Wyo. 2013). See also Munoz v. Munoz , 2002 WY 4, ¶ 6, 39 P.3d 390, 392 (Wyo. 2002) ; Olsen v. Olsen , 2013 WY 115, ¶ 33, 310 P.3d 888, 896 (Wyo. 2013). In reviewing the exercise of a district court's broad discretion under its contempt powers, we must determine whether the court reasonably could have concluded as it did. Roberts , ¶ 14, 304 [P.3d] at 120, citing Stephens v. Lavitt , 2010 WY 129, ¶ 18, 239 P.3d 634, 639 (Wyo. 2010).
Kleinpeter v. Kleinpeter , 2017 WY 76, ¶ 9, 397 P.3d 189, 192 (Wyo. 2017) (quoting Waterbury , 2017 WY 11, ¶ 7, 388 P.3d at 534-35 ; Shindell v. Shindell , 2014 WY 51, ¶ 7, 322 P.3d 1270, 1273 (Wyo. 2014) ).
[¶30] Wyo. Stat. Ann. § 20-2-204(b) (LexisNexis 2017) sets out the procedures that a trial court must follow to hold a parent in contempt for violating an order concerning the care, custody, and visitation of children:
A court having jurisdiction under W.S. 20-2-203 may, upon appropriate motion of a party, require a parent to appear before the court and show just cause why the parent should not be held in contempt, upon a showing that the parent has willfully violated an order concerning the care, custody and visitation of the children. In order to enforce and require future compliance with an order the court may find that the parent is in contempt of court, award attorney's fees, costs and any other relief as the court may deem necessary under the circumstances to the party aggrieved by the violation of an order.
The district court found Mother to be in indirect contempt of court, without issuing a show cause order on Father's motion. The transgression of § 20-2-204(b) was a serious procedural error that denied Mother her right to due process. For this reason, we find that the district court abused its discretion and reverse its contempt holding against Mother.
[¶31] Mother suggests that the district court modified custody of the children to penalize her contempt. However, the Final Order states: "As a result of [Mother's] contempt, the Court will not order [Father] to pay for the Aspen Creek counseling bills or *139 the flu shots."[7] As to its custody determination, the court stated: "it is in [the children's] best interests, based on the factors in W.S. § 20-2-202 [sic], to make [Father] the primary custodian." Contrary to Mother's assertion, the district court's penalty for Mother's contempt was limited to the Aspen Creek counseling bills and the cost of the flu shots. Likewise, our reversal of the district court's contempt holding is limited to those expenses.
B. Mother's Contempt Motion Against Father
[¶32] Mother alleges that, despite issuing an order to show cause, the district court never ruled on her motion. It is difficult to untangle the competing contempt motions, as the court resolved Father's motion by denying Mother the relief she requested in her motion (even though Father's motion did not request this relief). The record shows that the district court received ample evidence of Father's refusal to reimburse Mother's expenses and specifically ordered Father not to pay those expenses (effectively ordering Mother to pay the expenses). However, the court based its ruling on Mother's contempt-which we now reverse. We therefore remand Mother's contempt motion to the district court for further proceedings.
C. Modification of Custody
[¶33] Mother contends that the district court "factor[ed] [Mother's] contempt into its decision to modify custody and visitation." However, the record shows that the district court merely factored the same behaviors-alcohol use and alienation-into both its decision to hold mother in contempt of court and its modification of custody. Therefore, we will review the district court's consideration of Mother's alcohol use and alienating behavior in its decision to modify custody and visitation. Because custody and visitation are committed to the sound discretion of the trial court, we review the district court's decision for an abuse of discretion. See , e.g. , Ransom v. Ransom , 2017 WY 132, ¶ 9, 404 P.3d 1187, 1190 (Wyo. 2017).
[¶34] The district court engaged in an extensive analysis of the best interests of the children and considered each of the factors listed in Wyo. Stat. Ann. § 20-2-201(a) (LexisNexis 2017). The court found that Mother's alcohol use impaired her fitness as a parent under § 20-2-201(a)(iii) and demonstrated a lack of mental ability to care for the children under § 20-2-201(a)(ix). The court found that Mother's continued alienating behavior undermined the quality of the children's relationship with Father under § 20-2-201(a)(i) ; demonstrated that she was unwilling to accept all responsibilities of parenting under § 20-2-201(a)(iv) ; interfered with Father's communication and interaction with the children under § 20-2-201(a)(vi) ; disrespected Father's rights and responsibilities under § 20-2-201(a)(vii) ; exhibited a lack of mental ability to care for the children under § 20-2-201(a)(ix) ; and jeopardized the long-term well-being of the children under § 20-2-201(a)(x) (other factors). The district court's analysis was thorough and sound. In light of the clear evidence of Mother's consumption of alcohol while the children were in her custody and her continued alienation of the children from Father, and the reasonable placement of such behaviors within the enumerated factors of § 20-2-201(a), we find that the court did not abuse its discretion when it considered such conduct in its decision to modify custody.
CONCLUSION
[¶35] While the district court abused its discretion by issuing an ongoing temporary *140 order that improperly extended the pendency of the custody modification proceeding, it did not result in a final order barring further adjudication of the issues under the doctrine of res judicata or create a procedure that denied due process to Mother. Additionally, it was within the sound discretion of the district court to factor Mother's consumption of alcohol in the presence of the children and alienation of the children from Father into its decision to modify custody. However, the district court abused its discretion when it held Mother in contempt of court and improperly factored Mother's contempt into her motion against Father.
[¶36] We affirm the district court's modification of custody. We reverse the district court's contempt holding against Mother and remand Mother's contempt motion against Father for further proceedings consistent with this opinion.
FOX, J., delivers the opinion of the Court; BURKE, C.J., files a concurring in part and dissenting in part opinion, in which KAUTZ, J., joins.
BURKE, Chief Justice, concurring in part and dissenting in part, in which KAUTZ, Justice, joins.
[¶37] I concur in that part of the majority opinion affirming the district court's decision. I write separately for two reasons. First, I do not find it appropriate or necessary to consider Appellant's complaints about the temporary order. Second, I take exception to the majority's conclusion that the district court abused its discretion in entering the temporary order.
[¶38] The district court's temporary order granted both parties the opportunity to request a hearing if either of them determined that the custody arrangement was not workable or not in the best interests of the children. Appellant now contends that, under the facts presented, it was not appropriate to enter a temporary order at all. However, she did not present this argument to the district court or otherwise object to the temporary order at any time prior to entry of the final order. Rather, she raised her objection to the temporary order only after she disagreed with the final order which placed custody with Appellee.
[¶39] As the majority recognizes, "We generally do not consider issues not presented to the district court unless they are so fundamental they must be considered, or if they concern matters of jurisdiction." Tracy v. Tracy , 2017 WY 17, ¶ 22, 388 P.3d 1257, 1262 (Wyo. 2017). In Tracy , we reviewed the procedure involved in granting a temporary order because that issue affects many temporary custody proceedings. In contrast, Appellant's arguments are entirely dependent on the unique facts of this case. The issues raised now are not so fundamental that they should be reviewed by this Court. If Appellant had concerns, she should have brought them to the attention of the district court. Her failure to do so should preclude our review.
[¶40] Further, even if the court's issuance of a sua sponte temporary order could be deemed so fundamental that it must be considered, I would find no abuse of discretion in the court's approach. From my perspective, the court should be commended for its efforts in fashioning a remedy that was in the best interests of the children. It explained its reasoning in a comprehensive ten-page order. We should defer to that decision.
[¶41] We have long recognized that "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." Jensen v. Milatzo-Jensen , 2014 WY 165, ¶ 8, 340 P.3d 276, 278 (Wyo. 2014) (quoting Opitz v. Opitz , 2007 WY 207, ¶ 7, 173 P.3d 405, 407-08 (Wyo. 2007) ). We have also recognized that child custody and visitation decisions are among "the most difficult and demanding tasks assigned to a trial judge." Testerman v. Testerman , 2008 WY 112, ¶ 20, 193 P.3d 1141, 1146 (Wyo. 2008) (quoting Reavis v. Reavis , 955 P.2d 428, 431 (Wyo. 1998) ). Custody and visitation are committed to the sound discretion of the trial court. Blakely v. Blakely , 2009 WY 127, ¶ 6, 218 P.3d 253, 254 (Wyo. 2009). In determining whether an abuse of discretion has occurred, our primary consideration is the *141 reasonableness of the district court's decision. JCLK v. ZHB , 2015 WY 95, ¶ 8, 353 P.3d 720, 721-22 (Wyo. 2015).
[¶42] I do not dispute that there are legitimate concerns regarding the entry of temporary orders and that it should not be the "preferred procedure." I would also concede that in some cases, the entry of a temporary order may not be in the best interests of the children. But, we are not dealing with "some case." We are reviewing the best interest determination that was made in this case. Here, the district court determined that a temporary order was appropriate to promote stability for the children. In its order, the court first outlined the changes that had occurred since the original divorce decree:
Plaintiff was diagnosed and treated for breast cancer. Plaintiff was unemployed for more than a year as she underwent treatment for her breast cancer. Defendant has been in serious romantic relationships, has remarried, and the children now have several new step-siblings. In addition, there have been a number of instances of parental alienation that have occurred.
It then addressed the question presented and, in doing so, specifically expressed concerns about the instability that the children had been experiencing:
The Court has been primarily asked to determine whether a modification of custody would be in the best interests of the children. In particular, Defendant asks this court to modify custody and place the children in his primary care. The children are currently placed with the Plaintiff, who has been their primary caregiver for their entire lives. With all the instability the children have experienced in the past few years, the Court is reluctant to add to their burden by transferring primary custody away [from] the Plaintiff. At the same time, if the relationship between Defendant and the children is actually being threatened, the Court may not have any other options. Both parties have presented their arguments well and this is a close call.
The Court is very aware that most child custody cases involve some degree of parental alienation. This alienation is a natural result of the high tensions and emotional turmoil involved in a custody dispute. A problem arises, however, when one parent is specifically exacerbating the situation and actively manipulating feelings of ill-will between a parent and child. Whether or not Plaintiff intended to engage in parental alienation, there is no doubt that Plaintiff's behaviors meet the benchmarks of alienation. On the other hand, it is very likely that Plaintiff may have simply been reacting out of a fear that she might "lose" her kids, that the kids will like Defendant and his new wife, and enjoy spending time with them rather than with her. Even if that is so, Plaintiff's behavior has unnecessarily created additional stress on the children, and her behavior is inexcusable.
The court elaborated on its concerns about parental alienation:
Defendant has had the difficult task of showing how Plaintiff's behaviors caused a material change in circumstances affecting the children. Due to the nature of parental alienation, however, Defendant is only able to show an increased likelihood of harm in the future. Without a palpable harm or change at the present time, it is difficult to justify a modification of custody from one parent to the other. This is especially true, since the children presently have a good relationship with both parents. On the other hand, at the point where Plaintiff has successfully alienated the children from the Defendant, it is far too late for the Court to intercede.
It also recognized that, in the past, guidance from the court had been beneficial:
It is apparent to the Court, that absent the parties' misbehavior, the parties are both very good parents to their children. It is very much in the children's best interests that they continue to have frequent contact with both of their parents. The Court has observed that the parties are better able to co-parent whenever the Court has provided more specific guidance. The added guidance has helped to minimize contact between the parties and increase the parties['] understanding of what is expected of them. In fact, many of the incidents of parental alienation and major *142 discord between the parties occurred between 2011 and 2014. The parties' more recent history suggests that many of these problems have been dissipated to some extent, and that there is a good chance that the parties can successfully cooperate for the well-being of their children.
Ultimately, the court concluded:
After careful consideration, the Court has determined that the most appropriate solution at this time is to order that the parties must temporarily co-parent the children, with Plaintiff continuing as the designated primary or custodial parent of the children. Each parent will have the children for alternating two week periods. The parties reside in close proximity to each other, and this will not present a burden on the children. Defendant has the financial means to provide separate clothing and necessities for the children, so that the children are not required to constantly move all their belongings from home to home. The children will be able to attend the same school and continue their lives with minimal interruption. This will allow the children time to adjust to living with their new step-siblings and step-mom. At the same time, they will continue to have much of the stability that Plaintiff has provided the children. In addition, this will further decrease the extent that the parties are forced to interact with each other, by limiting the number of exchanges that occur.
[¶43] Our standard of review for finding an abuse of discretion is, appropriately, a high one. Here, the district court clearly made a decision that it considered to be in the best interests of the children. That decision was made in furtherance of promoting stability for the children. The court's reasoning is sound and the decision cannot be considered arbitrary or capricious. I would conclude the district court did not abuse its discretion.

Parental alienation, as defined by the district court, "generally means a child in a divorce situation unjustifiably rejects one parent based on negative influence from the other parent." This accords with the definition offered by Father's expert witness.

This is not to say that anytime a fundamental right is at issue, we will review it regardless of whether it was raised below. As we explained in Crofts v. State ex rel. Dep't of Game & Fish , 2016 WY 4, ¶ 24, 367 P.3d 619, 625 (Wyo. 2016) :
An appellant's assertion of a "fundamental right" does not necessarily persuade this Court to consider the issue for the first time on appeal. Rather, we will recognize an exception to the rule "for an issue that 'is of such a fundamental nature that it must be considered.' " Kordus [v. Montes ], 2014 WY 146, ¶ 10, 337 P.3d [1138,] 1141 [ (Wyo. 2014) ] (emphasis added) (quoting Utley v. Lankford (In re Guardianship of Lankford) , 2013 WY 65, ¶ 28, 301 P.3d 1092, 1101 (Wyo.2013) ). We have "declined to address newly raised issues that present constitutional questions where nothing more is shown to compel the Court's review [,]" Utley , 2013 WY 65, ¶ 29, 301 P.3d at 1101....
....
... Other courts have declined to consider a new issue on appeal, even when it may be an issue of a fundamental nature, because the issue was "not properly developed for review[.]" Greenwood v. FAA , 28 F.3d 971, 978 (9th Cir.1994). In Greenwood , the court held that it could not consider the appellant's argument that his equal protection rights were violated by the FAA's nonrenewal of his pilot examiner designation because there was no information in the record regarding his contention that the FAA's decision was motivated by his age. The court held that "[a] limited agency record may preclude review of substantive claims." Id.

The general requirements, not in dispute here, are: "(1) identity in parties; (2) identity in subject matter; (3) the issues are the same and relate to the subject matter; and (4) the capacities of the persons are identical in reference to both the subject matter and the issues between them." Platt , ¶ 27, 337 P.3d at 439 (citations omitted).

One concern is that a "temporary" custody order that unreasonably extends the pendency of a case may unfairly bind a party to its terms for a protracted period of time while denying him appellate review. In re KRA , 2004 WY 18, ¶ 10, 85 P.3d 432, 436 (Wyo. 2004) ("[A] judgment or order which determines the merits of the controversy and leaves nothing for future consideration is final and appealable, and it is not appealable unless it does those things.") (quoting Public Serv. Comm'n v. Lower Valley Power & Light, Inc. , 608 P.2d 660, 661 (Wyo. 1980) ); see also W.R.A.P. 1.05.

In Tracy , 2017 WY 17, ¶¶ 23-24, 388 P.3d at 1262, we reviewed for the first time on appeal the district court's authority and discretion to enter a temporary order due to the fundamental nature of the claim. We have likewise done so here, see supra ¶¶ 11-16, but the fundamental nature of Mother's claim does not go so far as to salvage her failure to assert res judicata below.

Further, it appears that Mother's counsel was aware that custody was at issue. She called as a witness the children's counselor and asked: "[W]hat is your recommendation to the judge in this case? .... Do you have a recommendation regarding custody or visitation or what should happen?"

Although Mother did not argue that the contempt order was criminal in nature, we could reasonably conclude that it was. The unconditional penalty (paying for the counseling bills and flu shots) was expressly imposed to punish Mother's prior transgressions of the court's Temporary Order with no prospective or compensatory purpose. See , e.g. , Stephens , 2010 WY 129, ¶ 15, 239 P.3d at 638 ; GGV v. JLR , 2005 WY 14, ¶ 12, 105 P.3d 474, 479 (Wyo. 2005) ; Munoz v. Munoz , 2002 WY 4, ¶ 11, 39 P.3d 390, 393 (Wyo. 2002). Determining the contempt to be criminal, however, would lead to the same result. A trial court's judgment of criminal contempt is null and void if-as here-it fails to follow the procedures of Wyo. R. Crim. P. 42, Horn v. Welch , 2002 WY 138, ¶¶ 17-18, 54 P.3d 754, 760 (Wyo. 2002), or fails to conduct a criminal contempt proceeding as a separate and independent criminal action. In re BD , 2010 WY 18, ¶ 5, 226 P.3d 272, 274 (Wyo. 2010) (citations omitted).